# Richmond

RICHMOND REDEVELOPMENT AND HOUSING AUTHORITY
v. LABURNUM CONSTRUCTION CORPORATION.

March 15, 1954.

Record No. 4161.

Present, All the Justices.

The opinion states the case.

*Alexander H. Sands, Jr., Edward A. Marks, Jr., Sands, Marks & Sands* and *Edwards, Rogers & Cudlipp,* for the plaintiff in error.

*William H. King, Thomas P. Bryan* and *McGuire, Eggleston, Bocock & Woods,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This common law action was brought by Richmond Re-development and Housing Authority, plaintiff, against Laburnum Construction Corporation, defendant, seeking to recover damages done to one of its buildings, Unit 14 of the Gilpin Court housing project. The unit was destroyed by a gas explosion alleged to have been caused by defective workmanship and materials furnished by the defendant. When the case was brought to issue the trial court sustained a motion for summary judgment interposed by the defendant, the effect of which was to dismiss plaintiff's action on the ground that is was barred by the statute of limitations, to which ruling we granted a writ of error.

The case involves a contract dated August 20, 1941, wherein it was agreed that the defendant would construct for the plaintiff a series of dwelling units known as Gilpin Court housing project. Under the contract the defendant was to furnish labor and materials and perform all work in accordance with the specifications and drawings.

Periodical payments were made in the amounts determined by estimates furnished by the defendant upon forms supplied by plaintiff. The forms contained this certificate: "According to the best of my knowledge and belief, I certify that all items and amounts shown on the face of this periodical estimate are correct; that all work has been performed and/or material supplied in full accordance with the terms and conditions of the contract. * * *"

Unit 14 of the project was completed "not later than February 26, 1943", and was delivered to the plaintiff for occupancy. The answers to interrogatories show that at or near the end of the construction of the units the defendant filed with the plaintiff certificates of completion in order to receive the balances due. These certificates stated: "The undersigned (Laburnum Construction Corporation) further certifies that all work required under this contract * * * has been performed in accordance with the terms hereof * * *". There was a final acceptance of the completed project on September 8, 1944, and payment in full was made.

On January 29, 1948, the gas explosion occurred (apparently as the result of a defective union) which caused the damage to Unit 14, and on January 28, 1949, a writ in assumpsit was issued against Laburnum Construction Corporation (the principal contractor) and Carle-Boehling Company, Inc. (plumbing subcontractor) seeking to recover resultant damages, which writ was returnable to March Rules, 1949. At the Second March Rules, 1949, plaintiff filed its declaration of trespass on the case in assumpsit. This declaration contained two counts, (1) for breach of contract or warranty as to materials furnished, and (2) for breach of warranty as to skillfull performance, to which, on April 11, 1949, each defendant filed pleas of non-assumpsit and the statute of limitations.

On September 19, 1949, the plaintiff, by motion, caused Carle-Boehling Company to be dismissed as codefendant and filed an amended declaration of trespass on the case in assumpsit against Laburnum Construction Corporation as the sole defendant. This declaration contained three counts, the added count sounding in deceit.

On October 17, 1949, the plaintiff moved to amend its declaration by striking therefrom the words "in assumpsit"; the motion was granted, and on November 1, 1949, the plaintiff filed its second amended declaration in accordance with the authorized amendment, whereupon the defendant craved oyer of the original writ and filed a plea in abatement based on the variance between the writ (in assumpsit) and the second amended declaration sounding in tort. On November 2, 1949, the plaintiff filed a motion to amend the original writ in assumpsit to correct the variance between it and the original declaration. The court overruled this motion but granted leave to the plaintiff to amend the writ in assumpsit to correct a variance between it and the then pending second amended declaration; whereupon the court then overruled defendant's plea in abatement. On December 22, 1949, the defendant filed its pleadings which included a motion to

strike; demurrer; special plea; and pleas of the statute of limitations and not guilty.

On January 14, 1950, the defendant filed a motion seeking to bring Carle-Boehling Company back into the case as party defendant. This motion was denied and further proceedings were delayed pending an appeal of the ruling, which was affirmed on September 5, 1951. (*Laburnum Construction Corp.* v. *Richmond, etc.,* 192 Va. 727, 66 S. E. (2d) 474.)

Proceedings were then resumed in the trial court when the plaintiff filed its third amended declaration on February 27, 1952. On February 29, 1952, the defendant filed a motion to strike and a demurrer to the declaration thus amended, both of which were overruled, whereupon the defendant filed (1) a plea of the statute of limitations; (2) a special plea of contractual limitation, and (3) a plea of not guilty.

Theretofore, on October 6, 1951, the defendant had filed interrogatories, calling for answers thereto. The answers were filed by plaintiff on March 28, 1952, and on April 14th the defendant took the depositions of certain of plaintiff's witnesses. Upon the filing of the depositions the defendant, on April 30, 1952, filed a motion for summary judgment based upon the pleadings, the contract and its accompanying documents, the answers to interrogatories and the exhibits in connection therewith, and depositions taken. The motion for summary judgment assigned three grounds, (1) that the third amended declaration was insufficient in law; (2) that any right of action against the defendant was barred by a one year limitation contained in the contract documents; and (3) that it was barred by the statute of limitations.

The original schedule of argument on the motion was interrupted by illness and other excusable eventualities. The defendant's argument in chief was heard on May 27, 1952, and for the reasons aforesaid the plaintiff's reply was not heard until August 2, 1952. At this time, in addition to its general reply, the plaintiff asserted two new theories, (1) that the plaintiff was immune from the defense of the statute of limitations because it was a political subdivision of the

Commonwealth; and (2) that the plaintiff was ignorant of any cause of action it may have had prior to the explosion (January 29, 1948) due to fraud of the defendant. While these issues were not presented by formal pleadings at the time of argument, on September 2, 1952, a written replication embracing the two theories was tendered; whereupon the defendant interposed objection to the filing of the replication on the grounds (1) of delay, and (2) that it did not aver that the defendant fraudulently concealed the alleged cause of action (as contemplated in § 8-33, Code, 1950).

The defendant prosecuted its motion for summary judgment under Rule 3:20 (Rules of Court), which reads: "Either party may file a motion for summary judment at any time after the parties are at issue. If it appears from the pleadings, orders, if any, made at a pretrial conference, and the admissions, if any, in a deposition that the moving party is entitled to judgment, the court shall. enter judgment in his favor. Summary judgment shall not be entered if the amount of damages or any other material fact is genuinely in dispute."

The trial court overruled defendant's first ground for summary judgment which alleged that the declaration was insufficient in law. The court held that Count 2 of the declaration was based upon an alleged breach of an implied warranty of skillful workmanship and use of proper materials, and that while some of the statements relied upon by the plaintiff did not, as a matter of law, possess the qualities of a warranty, there were others which might be warranties, as a matter of fact, dependent upon a jury finding that the alleged warranties induced payment of sums claimed by the defendant to be due under the contract.

The other two grounds in the motion, *i.e.*, (2) that the action against the defendant was barred by a one year limitation in the contract, and (3) that the action was barred by the statute of limitations, were treated in inverse order.

In deciding the applicable period of limitation the trial court held that the third amended declaration was an action *ex delicto* in three counts, that Count 1 charged a breach of

express warranties allegedly made after the work was completed, which induced the payment of the contract price claimed to be due; that Count 2 charged the breach of an implied warranty of skill and workmanship; and that Count 3 charged fraud and deceit allegedly committed after the work was completed which allegedly induced payment of the contract price. The court held that as the action was not to recover money founded upon an award or contract the limitation prescribed in § 8-13, Code of 1950, did not apply; that as it was not an action to recover money paid under fraud, and was not to recover money paid for the construction of a building, but on the contrary was an action to recover for damage to the building caused by the explosion, § 8-14 was also inapplicable.

Thus by the process of eliminating inapplicable statutes providing for the limitation of action, the trial court held the action to be a personal action and that since there was no special statutory limitations covering the case it was controlled by § 8-24, Code, 1950, which reads:

"*Of actions not before specified.*—Every personal action, for which no limitation is otherwise prescribed, shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued." (Code, 1919, § 5818)

The trial court decided that as the causes of action alleged in Counts 1 and 3 of the final declaration were not such as would survive they were barred by the one-year limitation. However, the court held that Count 2 which charged a breach of an implied warranty of skill and workmanship, (*i.e.*, the failure to perform a duty imposed by law was *quasi-tortious* conduct directed at the property itself resulting in a weakened structure which ultimately caused the explosion), charged a direct injury resulting from this alleged lack of skillful performance, that this action survived, and thus the five year

statutory limitation was applicable. No cross error was assigned to this ruling. The court then held that the cause of action alleged in Count 2 was barred by the one year contractual limitation, which ruling will be discussed later.

The plaintiff argued that the five year limitation applied also to Counts 1 and 3, and that there was no applicable limitation of one year contained in the contract. It assigned errors accordingly.

 In considering whether the five year or the one year period of limitation in § 8-24 is to be applied, we have frequently stated the determining principles. See *Mumpower* v. *Bristol*, 94 Va. 737, 27 S. E. 581; *Winston* v. *Gordon*, 115 Va. 899, 80 S. E. 756; *Cover* v. *Critcher*, 143 Va. 357, 130 S. E. 238; *Vance* v. *Maytag Sales Corp.*, 159 Va. 373, 165 S. E. 393; *Watson* v. *Daniel*, 165 Va. 564, 183 S. E. 183; *Westover Court Corp.* v. *Eley*, 185 Va. 718, 40 S. E. (2d) 177. In treating the question of survival of actions consideration should be given to § 64-135, Code, 1950, which provides:

*"For goods carried away, waste or damage to estate of or by decedent.*—An action of trespass or trespass on the case may be maintained by or against a personal representative for the taking or carrying away any goods or for the waste or destruction of, or damage to, any estate of or by his decedent." (Code, 1919, § 5385)

This section has been consistently construed to provide for survival where the damage to property for which recovery is sought is the direct result of the wrong. Where such damage is an indirect result of the wrong the action does not survive. Thus, in *Mumpower* v. *Bristol, supra,* where an action of trespass on the case was brought for maliciously suing out an injunction which restrained the plaintiff from operating his mill, we said:

"It is quite obvious that this injunction did not operate to take or carry away the goods of the plaintiff, nor cause the waste or destruction of, or inflict any damage upon, the estate of the plaintiff. It is true that the language of the statute (§ 64-135) is comprehensive and embraces damage

of any kind or degree to the estate, real or personal, of the person aggrieved; but the damage must be direct, and not the consequential injury or loss to the estate which flows from a wrongful act directly affecting the person only. * * *" (94 Va., at p. 740)

It is argued by the plaintiff that if we sustain the trial court's ruling that the one year limitation applies to Counts 1 and 3 in the instant case, we will thereby overrule cases heretofore decided. We are directed to our decision in *Westover Court Corp.* v. *Eley, supra*. The facts in the *Eley* case are distinguishable from the facts in the case before us. There, Eley brought an action for fraud and deceit against the defendant, alleging that an agent, in effecting the sale of a house to Eley, falsely stated that the furnace was of good quality and was of sufficient capacity to heat the house. In fact, the furnace was defective and had to be replaced. Eley sought as damages an amount equivalent to the value of a furnace without defects. The Westover Corporation pleaded the statute of limitations, and the lower court overruled the plea and entered judgment for Eley. On appeal the ruling of the trial court was affirmed. We there held that the failure of the defendant to install an adequate furnace as agreed amounted to a direct damage to the property and estate of Eley and therefore the five year limitation applied.

In the case under consideration the gravemen of the plaintiff's claim as stressed in Counts 1 and 3 was that it had been induced to part with its money on account of a breach of warranty and constructive fraud. Thus the parting with the money under the alleged circumstances was the direct damage suffered by plaintiff and the damage caused by the explosion for which recovery is here sought was an indirect or consequential result of the initial or direct wrong with which the defendant is charged.

In order for the damage here complained of to be produced it was necessary, first, that the allegedly defective union break; second, that the gas escaping from the break proceed along the pipeline beneath the building rather than to the

surface of the soil; third, that the gas be confined under the building rather than escape through the various vents in the walls; and fourth, that the gas be ignited by a flame or spark from some foreign source, thus causing the explosion. The resultant damage thus caused cannot be classed as direct damage, for had the allegedly faulty joint (the direct damage) not broken, permitting gas to escape, etc., the indirect or consequential damage here sued for would not have occurred. "Consequential damage" is defined in Black's Law Dictionary, 3rd ed., p. 403, as: "Such damage, loss or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." We are of the opinion the trial court correctly ruled that Counts 1 and 3 did not allege a direct damage, did not state a cause of action which would survive, and that the one year limitation in § 8-24 was applicable to them.

In dealing with the question as to when the limitation on the three counts in the declaration began to run, the trial court held that as Count 1 charged the breach of an express warranty the cause of action arose when the warranty was breached and that the breach occurred not later than August 15, 1944, the date of the last "periodical estimate for partial payment" executed by the defendant. As to Count 2, charging a breach of an implied warranty of skill which was breached by unskillful performance, the court held that the breach occurred on the day such defective work was performed, and that according to plaintiff's answers to interrogatories this was on some date between October 3, 1942, and January 6, 1943, and not later than February 26, 1943, the date the unit was delivered for occupancy. The court also held that the limitation as to Count 3, charging fraud and deceit, began to run not later than August 15, 1944, for the same reasons assigned in the holding as to Count 1.

Errors were assigned to the court's ruling, the plaintiff arguing that under the peculiar facts of this case, "because of the nature of the circumstances giving rise to the cause of action, i.e. the defect in a union supplied six (6) feet under-

ground, that the period of limitation did not begin to run until the discovery of the defect", which was the time of the explosion. Plaintiff concurred "in the three general propositions relating to limitation of actions to the effect that: (1) Ordinarily the period of limitation begins to run when the cause of action accrues; (2) Ordinarily the cause of action in tort for damages to property resulting from breach of contract accrues upon breach of contract—not when the damage results; (3) Ordinarily ignorance of the existence of a right of action does not delay the operation of the statute of limitations."

Plaintiff argues that there is a recognized exception to these general rules when the cause of action is such that it is "impossible" of discovery until the occurrence of some event subsequent to its accrual, and that the period of limitation does not, under these circumstances, begin to run until the date of discovery or the date on which discovery should have, in the exercise of ordinary diligence, been made. As illustrative of the rule relied upon, the plaintiff cites: *Falls Branch Coal Co.* v. *Proctor Coal Co.*, 203 Ky. 307, 262 S. W. 300; *Lewey* v. *Fricke Coke Co.*, 166 Pa. 536, 28 L.R.A. 283. These are mining cases involving subterranean trespass. In the instant case trespass is not involved.

Plaintiff does not attempt to explain when, in the exercise of ordinary diligence, this defective fitting would have been discovered had the explosion not occurred. From this it could be assumed, according to the plaintiff's present argument, that had the explosion not occurred, the defect would never have been discovered and therefore no cause of action would have accrued. Such theory is in conflict with plaintiff's declared allegations. Carrying the theory further and assuming as does the plaintiff that the defective fitting which allegedly caused the explosion was incapable of discovery until an explosion occurred, and that no cause of action accrued until such happening, then the limitation on the action for the defective fitting would not begin to run until the date of the explosion, no matter how far in the future it occurred.

This court, from early times, has adhered to the general rule, which is not controverted by the plaintiff, that the limitation begins to run from the moment the cause of action accrues and not from the time it is ascertained that damage has been sustained. *M'Alexander* v. *Montgomery* (1832), 4 Leigh (31 Va.) 61, citing with approval *Wilcox* v. *Plummer* (1830), 4 Peters 172, 7 L. ed. 821. See also *Huston* v. *Cantril* (1840), 11 Leigh (38 Va.) 136; *Winston* v. *Gordon, supra; Culpeper Natl. Bank* v. *Tidewater Improvement Co.,* 119 Va. 73, 89 S. E. 118.

In the cases above cited the existence of the cause of action was equally as difficult of ascertainment as the cause of action in the case at bar. The difficulty in ascertaining the fact that a cause of action exists plays no part in the general rule.

In the comparatively recent case of *Street* v. *Consumers Mining Corp.* (1946), 185 Va. 561, 39 S. E. (2d) 271, Noah Street, the plaintiff's intestate, had been employed in the defendant's mine. The wrongful conduct of the defendant in providing him an unsafe place in which to work caused him to have a fatal disease. The wrongful conduct occurred before 1936 and the disease was not discovered until 1940. Before decedent knew he had a cause of action it had been barred by the statute of limitations. The disease caused his death in 1942, and this action was brought for wrongful death. But the death, which was a consequence of the original wrongdoing of the defendant, was not a new cause of action. Hence the cause of action was completely barred by the statute of limitations before Street died. There we said:

"The right of Noah Street to bring an action for his alleged injuries accrued when the wrong was done to him and not at the time of the damage. The foundation of his right was the alleged wrong. *Richmond* v. *James,* 170 Va. 553, 567, 197 S. E. 416, 116 A.L.R. 967. Under Virginia Code, 1942 (Michie), section 5818 (now § 8-24, Code of 1950) that right expired at the expiration of one year next after the right to bring the same had accrued.

"The rule that the statute of limitations begins to run

from the time of the commission of the wrongful or negligent act is well stated in 17 R. C. L. 764:

" 'Therefore, as a general rule, where an injury, though slight, is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy therefor the statute of limitations attaches at once. It is not material that all the damages resulting from the act should have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. The act itself is regarded as the ground of the action and is not legally severable from its consequence. The statute then begins to run, and not from the time of the damage or discovery of the injury.' (185 Va., at page 566)

 * * * * * * *

"Statutes of limitation are statutes of repose, the object of which is to compel the exercise of a right of action within a reasonable time. They are designed to suppress fraudulent and stale claims from being asserted after a great lapse of time, to the surprise of the parties, when the evidence may have been lost, the facts may have become obscure because of defective memory, or the witnesses have died or disappeared." (185 Va., at page 575)

We are in full accord with the trial court's ruling as to the question of when the limitation on the three counts in the declaration began to run.

It will be remembered that on September 3, 1952, the plaintiff belatedly filed a special replication to the defendant's pleas and defenses. This replication contained an allegation that plaintiff was ignorant of its cause of action "due to fraud on the part of the defendant", which fraud was not discovered until January 29, 1948 (the date of the explosion). Plaintiff therefore contended that the statute did not begin to run until such discovery. While objection was made by the defendant to the dilatory filing of this special replication the trial court considered the same under a second objection asserted by de-

fendant, which was that the replication did not aver that the defendant fraudulently concealed the alleged cause of action. The court agreed with the defendant in this regard, holding that the clear implication to be drawn from the pleadings was that the plaintiff was ignorant of its alleged cause of action due to the misrepresentations alleged in Counts 1 and 3 of the declaration, which misrepresentations were allegedly made for the purpose of obtaining money due under the contract and not for the purpose of concealing a cause of action as contemplated in § 8-33, Code, 1950. We are in accord with this ruling.

It appears from the pleadings and the answers to interrogatories that Carle-Boehling Co., Inc., was the subcontractor who furnished and installed the alleged defective fitting. It further appears that while the plaintiff alleged in Count 3 that the defendant was guilty of both actual and constructive fraud in allegedly misrepresenting that the work had been completed according to specifications, yet the theory actually relied upon was constructive fraud. That is, under the terms of the contract, plaintiff sought to hold defendant answerable for the work of the independent subcontractor because it had constructive knowledge of the alleged defective work performed by such subcontractor.

It nowhere appears that the designed purpose of the alleged misrepresentations was to conceal the cause of action. Constructive fraud is not such as will toll the running of the statute of limitations. The character of fraud necessary to toll the statute must be of a variety involving moral turpitude. A defendant must intend to conceal the discovery of the cause of action by trick or artifice and must have thus actually concealed it from the plaintiff in order for the exception to apply. *Culpeper Natl. Bank* v. *Tidewater Improvement Co., supra.*

As heretofore stated, the court held that the five year provision in § 8-24 applied to Count 2 of the declaration. The court held, however, that this count was barred by the limitation contained in the contract. The contractual limita-

tion was raised by a special plea filed by the defendant. The pertinent provision in the contract reads: "Neither the final certificate of payment nor any provision in the Contract Documents, nor partial or entire use or occupancy of the premises by the Local Authority (plaintiff) shall constitute an acceptance of work not done in accordance with the Contract Documents or relieve the contractor (defendant) of liability in respect to any express warranties or responsibility for faulty materials or workmanship The contractor shall remedy any defects in the work and pay for any damage to other work resulting therefrom which shall appear within a period of one year from the date of final acceptance. unless a longer period is specified. The Local Authority will give notice of observed defects with reasonable promptness." In addition to this provision the bond required to be given by the defendant provided a limitation of one year from the date of any default. The specifications also contained a one year guarantee as to the pipe fittings, etc.

The court held that the entire paragraph dealing with the limitations must be read as a whole and then declared that when it was so read it appeared that the first sentence "means exactly what it says, i.e. that the plaintiff did not waive any rights it might otherwise have by its acceptance of the work. But the second paragraph (sentence) does purport to limit these rights, viz., that the defendant (1) would remedy any defects, and (2) pay for the damage done to other work, whenever the defect or damage appeared within one year 'unless a longer period is specified'. The contract at no place specified a longer period. If the second sentence is to be given any meaning at all it must mean that the defendant would not be liable for 'faulty materials or workmanship' for a period beyond one year."

The court concluded that as Count 2 charged the defendant with faulty workmanship it came within the purview of the contractual limitation, and that any action under this count was barred after September 8, 1945, one year after final acceptance of the work. The court further stated that the

contractual limitation would not govern torts committed by the defendant, neither would it govern express warranties made by it and not required by the contract, and that for this reason the causes of action stated in Counts 1 and 3 would not be governed by the contractual limitation of one year.

While we agree with the court's ruling on the contractual limitation as it applies to Count 2, the record discloses that the alleged breach under this count occurred on the day when the defective work was done which is shown by answers to interrogatories to have been some date between October 3, 1942, and January 6, 1943, "and not later than February 26, 1943". Assuming that the cause of action accrued on this latter date, the action was not brought until January 28, 1949, the date the writ in assumpsit was issued, and thus it would be barred by the five year provision contained in § 8-24, as the suit was not filed until five years, eleven months and two days after the cause of action had accrued.

In addition to what has been said regarding the applicable limitations, the trial court further held that as this action in its original form was instituted on January 28, 1949, by the issuance of a writ in assumpsit, the issuance of this writ would toll the statute as to all *ex contractu* pleadings timely filed thereafter. But the amended pleadings subsequently filed were *ex delicto* counts and therefore were not responsive to the writ in assumpsit. Therefore the court reasoned that when it became necessary for the plaintiff to amend the writ to "trespass on the case", the statute of limitations was not tolled until the *ex delicto* writ made its appearance through the amendment on December 17, 1949, The court held that the amendments to the several declarations and to the writ were not of that class which related back to the original writ, that such were changes in "the form of action", citing Burks Pleading and Practice, 4th ed., Limitation of Actions, § 235(2), page 413, where it is said, "* * * (A)n amendment which introduces a new or different cause of action, or makes a new or different demand, does not relate back and the statute

continues to run till date of amendment." (See footnote 26 to this section for cases and authorities cited.)

Obviously, under this ruling, each of the counts in the declaration would be barred by the five year limitation prescribed in § 8-24. But for reasons heretofore stated it is not necessary for us to pass upon the court's ruling in this instance, although under strict common law pleading the reasoning of the court in reaching this conclusion is most persuasive. See *New River Mineral Co.* v. *Painter*, 100 Va. 507, 510, 42 S. E. 300; *Wise Terminal Co.* v. *McCormick*, 107 Va. 376, 377, 378, 58 S. E. 584; *Fensom* v. *Rabb*, 190 Va. 788, 803, 58 S. E. (2d) 18.

As heretofore stated, the plaintiff, on September 3, 1952, after final argument, filed a pleading which the trial court accepted as a special replication to the defendant's plea of the statute of limitations. The replication contended that plaintiff was a political subdivision of the Commonwealth, created and maintained solely for public purposes, and was not therefore subject to the bar of any statute of limitations. The trial court referred to the "Housing Authorities Law", sections 36-1, *et seq.*, Virginia Code, 1950, and held that while plaintiff was denominated a political subdivision of the State, it did not qualify as one acting for purely governmental purposes. We concur in this ruling. *Johnson* v. *Black*, 103 Va. 477, 492, 49 S. E. 633; *Federal Housing Administration* v. *Burr*, 309 U. S. 242, 84 L. ed. 724, 729, 60 S. Ct. 488.

For the reasons here expressed the judgment of the trial court is

*Affirmed.*