# Westminster Investing Corporation

### v.

# Lamps Unlimited, Inc.

Record No. 870770

April 21, 1989

Present: All the Justices

*Campbell Killefer (John N. Nassikas, III; Kenneth M. Willner; Shaw, Pittman, Potts & Trowbridge*, on briefs), for appellant.
*Nelson Deckelbaum (Melissa Siegal*, on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

In this appeal, we determine whether the trial court erred in applying a so-called "continuous breach" exception to a statute of limitations defense in a breach of contract action.

Lamps Unlimited, Inc. (Lamps), a lessee, sued Westminster Investing Corporation (Westminster), a lessor, to recover damages resulting from Westminster's alleged breach of a written lease agreement. Westminster claimed at trial, as it does in this appeal, that the action is time-barred because it was not filed within five years from the time of the alleged breach. The trial court rejected Westminster's claim on the ground that the breach was continuous and, therefore, a new five-year limitation period began to run each day the lease provision was breached. A jury returned a verdict in favor of Lamps in the amount of $53,000, and the trial court entered judgment on the verdict. Westminster appeals.

The material facts are undisputed. Westminster owns and operates Seven Corners Shopping Center (Seven Corners) in Fairfax County. Lamps owns and operates a chain of retail lighting stores in the metropolitan Washington, D.C. area.

On July 27, 1976, Westminster and Lamps entered into a written lease agreement whereby Lamps agreed to lease space at Seven Corners from Westminster for a term of 10 years. The term began on October 1, 1976, the date of occupancy.

Michael Craig negotiated the lease agreement on behalf of Westminster. During negotiations, Craig orally represented that Westminster would institute and enforce uniform business hours for all tenants in the shopping center. This representation induced Lamps to execute the lease. However, the lease states only that Lamps' hours of operation "shall be construed to mean at least 10 a.m. to 9 p.m. on Monday through Saturday, and noon to 5 p.m. Sunday, which hours can be changed only by a majority vote of the Merchant's Association and the consent of LANDLORD." Craig represented to Lamps that Westminster planned to place this provision into the leases of all Seven Corners tenants.

Shortly after commencing operation under the lease agreement in October 1976, Lamps learned that uniform hours of operation among the tenants in the shopping center were neither honored by the tenants nor enforced by Westminster. After repeatedly complaining to Westminster about its failure to enforce uniform hours of operation, Lamps engaged an attorney who made a written complaint in October 1977.

Thereafter, Westminster gave Lamps continued assurances that it would take appropriate measures to force the other tenants to maintain uniform hours. Admittedly, however, Westminster did little other than levy inconsequential fines.

After lodging additional complaints and hiring other attorneys, Lamps vacated its store at Seven Corners in June 1983, approximately three years before the expiration of its 10-year lease term. On October 28, 1985, Lamps filed this breach of contract action. At trial, Lamps conceded that the five-year statute of limitations applied and, therefore, barred any damages it had incurred prior to October 28, 1980. Thus, both parties agree that the five-year limitation period applies in this case.

Westminster contends that Lamps' cause of action "accrued as early as October 1976" and the five-year limitation period ran from that time. Lamps contends, on the other hand, that "West-

minster's continuous failure to enforce the hours of operation covenant contained in its tenants' leases constituted multiple breaches throughout the term of [its] tenancy. . . . Thus, the applicable five-year statute of limitations did not bar the action, even though the breaches commenced in 1976, as a new cause of action accrued from day to day."

"[A]ctions founded upon a [written] contract . . . shall be brought within [five] years next after the cause of action shall have accrued." Code § 8.01-246. "[T]he cause of action shall be deemed to accrue and the prescribed limitation period shall begin to run . . . when the breach of contract or duty occurs in the case of damage to property and not when the resulting damage is discovered." Code § 8.01-230.

■ The essential elements of a cause of action[1] for breach of contract are: (1) "a legal obligation of a defendant to the plaintiff," (2) "a violation or breach of that right or duty," and (3) "a consequential injury or damage to the plaintiff." *Caudill* v. *Wise Rambler*, 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969). Moreover, it is well established that

> where an injury, though slight, is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy therefor the statute of limitations attaches at once. It is not material that all the damages resulting from the act should have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date.

*Id.* at 14-15, 168 S.E.2d at 260 (quoting *Housing Authority* v. *Laburnum Corp.*, 195 Va. 827, 839, 80 S.E.2d 574, 581 (1954)).

---

[1] We repeatedly have drawn the distinction between a "cause of action" and a "right of action." The terms are not interchangeable. A right of action, being remedial, is the right to presently enforce a cause of action; no right of action can arise until a cause of action exists. Although a cause of action and a right of action may accrue simultaneously, they need not do so. *Stone* v. *Ethan Allen*, 232 Va. 365, 368, 350 S.E.2d 629, 631 (1986); *First Va. Bank-Colonial* v. *Baker*, 225 Va. 72, 81-82, 301 S.E.2d 8, 13-14 (1983); *Locke* v. *Johns-Manville Corp.*, 221 Va. 951, 957, 275 S.E.2d 900, 904 (1981); *Caudill* v. *Wise Rambler*, 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969).

In the present case, Lamps sustained damages at the time Westminster first breached the contract. Thus, Lamps' cause of action and its right of action accrued simultaneously.

Statutes of limitation "serve an important and salutary purpose." *Burns* v. *Stafford County*, 227 Va. 354, 359, 315 S.E.2d 856, 859 (1984). Indeed, without limitations on actions,

> defendants could find themselves at the mercy of unscrupulous plaintiffs who hoard evidence that supports their position while waiting for their prospective opponents to discard evidence that would help make a defense. In light of the policy that surrounds statutes of limitation, the bar of such statutes should not be lifted unless the legislature makes unmistakably clear that such is to occur in a given case. Where there exists any doubt, it should be resolved in favor of the operation of the statute of limitations.

*Id.*

Thus, courts are obligated to enforce statutes of limitation strictly and to construe any exception thereto narrowly.

> It is well settled, and needs the citation of no authority to that effect, that the statute begins to run when the right of action accrues. It is equally well settled that in its terms the statute is absolute, admitting of no exception which itself does not recognize, unless under certain extraordinary circumstances, wherein the positive and plain requirements of an equitable estoppel preclude its application.

*Boykins Corp.* v. *Weldon, Inc.*, 221 Va. 81, 85, 266 S.E.2d 887, 889 (1980) (quoting *Brunswick Corp.* v. *Perkinson*, 153 Va. 603, 608, 151 S.E. 138, 140 (1930)).

Lamps' executive vice president testified that after the store opened in 1976, Lamps knew that uniform hours of operation were not being enforced by Westminster. Lamps immediately complained to Westminster's manager. In October 1977, Lamps hired a lawyer who wrote a letter to Westminster complaining about its failure to enforce uniform business hours.

In its motion for judgment, Lamps alleged that the uniform-hours-of-operation provision was a "material inducement to entering into the contract." Thus, when Westminster failed to enforce the provision in 1976, a material breach of contract had occurred. At that time, Lamps' cause of action accrued and the five-year statute of limitations began to run.

Nonetheless, Lamps remained in the premises for seven years, even though Westminster never enforced uniform hours of operation. Finally, on October 28, 1985, nine years after the breach, Lamps instituted suit.

Lamps contends, however, that Westminster's breach was "continuous," and, therefore, a new cause of action accrued every day Westminster failed to enforce uniform operating hours. In adopting Lamps' "continuous breach" contention, the trial court relied primarily upon *McKildoe* v. *Darracott*, 54 Va. (13 Gratt.) 278 (1856), and *Indian Territory Illuminating Oil Co.* v. *Rosamond*, 120 P.2d 349 (Okla. 1941).

In *McKildoe*, the question was whether an improper sublease constituted a continuing act of forfeiture. In resolving that question, we recognized the English common-law doctrine of continuing forfeiture, which provides that a landlord may terminate a lease and exercise his right of reentry when a tenant's breach of the lease continues, even if the landlord previously had waived forfeiture for the tenant's prior breaches.

*McKildoe* is inapposite; it did not involve a statute of limitations issue. The decision stands, in part, for the proposition that a landlord's waiver of his remedy of reentry for one breach will not preclude him from asserting his reentry right for a new or continuing breach. *Id.* at 285.

*Indian Territory* is an Oklahoma oil and gas case. The plaintiff, an owner of a one-eighth interest in the oil and gas in a certain tract of land, sought to recover damages from the defendant, the lessee of the oil and gas, for the defendant's failure to protect the tract of land from drainage by neighboring oil and gas wells. Plaintiff contended that the defendant had impliedly covenanted to drill protective wells along the periphery of plaintiff's property. In holding that plaintiff's action was not time-barred, the Oklahoma Supreme Court concluded that the plaintiff was not required to treat the defendant's failure to drill a well in 1929 as the complete breach of the lease. The court reasoned that the plaintiff "could not then bring his action for damages which he might suffer during the future life of the lease, for such damages would be contingent, speculative, and wholly incapable of ascertainment." *Id.* at 352.

The Oklahoma court, therefore, held that the limitation period began to run when the damages could be ascertained with specificity. Virginia's statute provides, however, that "the cause of

action . . . accrue[s] and the prescribed limitation period shall begin to run . . . when the breach of contract . . . occurs in the case of damage to property and not when the resulting damage is discovered." Code § 8.01-230. Moreover, only "slight" damage need result from the breach; it is immaterial that all damages resulting from the breach have not been sustained. *Caudill*, 210 Va. at 14-15, 168 S.E.2d at 260; *Laburnum Corp.*, 195 Va. at 839, 80 S.E.2d at 581.

We reject Lamps' "continuous breach" theory. The language of Code § 8.01-230 is absolute and admits of no exception applicable to this case. Applying the rule of strict construction to the statute's enforcement, we conclude that Lamps' cause of action accrued in 1976 when Westminster breached the contract by failing to enforce the uniform-hours-of-operation provision.[2] Thus, Lamps had five years from the time of breach to institute suit. Accordingly, we hold that Lamps' suit is time-barred.

Therefore, we will reverse the trial court's judgment and enter final judgment for Westminster.

*Reversed and final judgment.*

---

[2] We reject Lamps' argument that Westminster is equitably estopped to raise the statute of limitations defense. Lamps failed to prove by "clear, precise, and unequivocal evidence" the six elements of equitable estoppel as set forth in *Boykins*, 221 Va. at 86, 266 S.E.2d at 890.