30 F.3d 130
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Walter V. MCCLURE, Sr.; Park Forest Farms, Incorporated, a
Virginia Corporation; Windhover, Limited, a
Virginia Limited Partnership,
Plaintiffs-Appellants,
v.
HOLSTEIN-FRIESIAN ASSOCIATION OF AMERICA, Defendant-Appellee.
 No. 93-1401.
 United States Court of Appeals, Fourth Circuit.
 Argued April 12, 1994.
Decided Aug. 3, 1994.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Jackson L. Kiser, Chief District Judge. (CA-91-554-R).
 Argued George Irving Vogel, II, Vogel & Cromwell, Roanoke, VA, for appellants.
 C. Brian McDonald, Bulkley, Richardson & Gelinas, Springfield, MA, for appellee.
 On Brief James Robert Cromwell, Vogel & Cromwell, Roanoke, VA, for appellants.
 W.D.Va.
 AFFIRMED.
 Before WILLIAMS and MICHAEL, Circuit Judges, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants Walter V. McClure, Sr., Windhover, Ltd., and Park Forest Farms, Inc., appeal the order of the district court granting the motion of the Holstein-Friesian Association of America (HFAA) under Rule 50 of the Federal Rules of Civil Procedure for judgment as a matter of law. Appellants sued HFAA for breach of contract arising from an incorrect number on the registration certificate of their black and white Holstein bull. The district court, in granting HFAA's Rule 50 motion, concluded that the claim was barred by the relevant statute of limitations. We affirm.
 
 I.
 
 2
 Appellants, dairy farmers who breed registered Holstein cattle, own a Holstein bull named Bi-Jo Bell Lucas (Lucas). Appellee HFAA is the only organization in the United States that registers black and white Holstein cattle. The HFAA registers a bull by assigning it a seven digit number, which is the only means of identifying that particular bull's breeding records. The breeding of Holstein cattle is generally done by artificial insemination to genetically create cows capable of producing superior milk. To accomplish this goal, artificial insemination companies lease bulls, obtain and freeze the semen, and then sell it to dairy farmers for breeding purposes. These companies lease bulls "proven" to have superior breeding records as set forth on the HFAA's sire summary, which is a listing that assesses the quality of the milking cows sired by an HFAA-registered bull.
 
 
 3
 The process of "proving" a bull takes approximately four and onehalf to five years, and requires breeding the bull with as many cows as possible in as many herds as possible. The owner of the bull must wait until the impregnated cows give birth to daughters, and the daughters mature, have calves of their own, and begin to produce milk. The owner of the bull then collects the milk production data and sends it to a Dairy Records Processing Center, which in turn submits the data to the United States Department of Agriculture (USDA). The data regarding the bull's breeding record is identified by the number on the bull's HFAA registration certificate. When a bull has produced ten milking daughters, the USDA issues the breeding records of the bull, or the "bull proof," which is submitted to the HFAA for preparation of the sire summary.
 
 
 4
 Lucas was born on December 13, 1982, to a cow owned by Walter V. McClure, Sr. (McClure), and his partnership, Windhover, Limited. McClure, who is a member of the HFAA, applied for a registration number for Lucas and paid the applicable fee. On August 9, 1983, the HFAA issued a registration certificate which listed Lucas's registration number as 1902 539. The HFAA, however, committed a clerical error during the typing of Lucas's registration certificate because number 1902 539 had already been assigned to an Ohio bull named Yostdale Glendall Sarge (Sarge). The number entered into the computer as Lucas's registration number was actually 19 20 539.
 
 
 5
 Unaware of this clerical error, in 1984, McClure, using the number 1902 539, bred Lucas to his herd and produced approximately fifteen daughters. Lucas was then sent to Park Forest Farms, Inc., which assumed responsibility for Lucas's breeding and bred him to numerous herds in Virginia and North Carolina. During this intensive breeding period, a copy of the registration certificate was sent with Lucas when he was transferred from herd to herd, and on the records of Lucas's daughters, the sire was incorrectly identified as 1902 539.
 
 
 6
 In the fall of 1987, Appellants believed that Lucas would have sufficient milking daughters to receive his bull proof in January 1988.* McClure, however, did not receive the expected bull proof. He con tacted the USDA and discovered the clerical error. Because the number on Lucas's registration certificate was listed as 1902 539, and that number had been assigned in the computer to identify Sarge, all of Lucas's records had been credited to Sarge. According to Appellants, had this information been properly credited to Lucas, he would have been eligible for a bull proof in January 1988, and would have been listed in the HFAA sire summary as being in the top 5% of bulls nationwide.
 
 
 7
 McClure attempted to have the HFAA correct the records that spring, but his attempts were unsuccessful, and he was also unable to obtain a bull proof for Lucas in July 1988. At that time, McClure had been negotiating with American Breeders Service, an artificial insemination company, to lease Lucas for semen production, but Lucas's failure to receive a bull proof by July 1988 chilled their interest. Although McClure was finally able to procure a bull proof for Lucas in January 1989, Appellants were never able to lease Lucas for semen production.
 
 
 8
 On August 5, 1991, Appellants filed this diversity suit in the Western District of Virginia alleging breach of contract based on the HFAA's failure to publish an accurate and timely sire summary of Lucas. HFAA filed a motion for summary judgment contending that Appellants' claim was barred by the five-year Virginia statute of limitations, which the parties agreed was the applicable statute. Va.Code Ann. Sec. 8.01-246 (Michie 1992). HFAA argued that the breach of contract occurred in 1983, when the incorrect number was typed on Lucas's registration certificate. The court denied the summary judgment motion, holding that the statute of limitations did not begin to run until January 1988, which was the first time the HFAA failed to include Lucas in a sire summary for which he was qualified. Because Appellants filed the instant cause of action in August 1991, and the Virginia statute of limitations for written contracts is five years, the court determined that the action was timely filed. The case proceeded to a jury trial.
 
 
 9
 After two days of trial, and following the conclusion of Appellants' case, HFAA moved, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure for "judgment as a matter of law." HFAA argued that Appellants had failed to introduce any evidence regarding its duty to publish accurate sire summaries according to the contract. The only breach of contract that Appellants had presented was the incorrect number typed on Lucas's registration certificate and, since that event occurred in August 1983, the statute of limitations had run on Appellants' claim. The district court agreed and dismissed Appellants' case.
 
 II.
 
 10
 We review the grant of a Rule 50 motion for judgment as a matter of law de novo. Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir.1985). The appropriate inquiry is "whether, without weighing the evidence or considering the credibility of the witnesses, 'there can be but one conclusion as to the verdict that reasonable jurors could have reached.' " Id. (quoting Wheatley v. Gladden, 660 F.2d 1024, 1027 (4th Cir.1981)). Thus, if the nonmoving party has failed to present evidence to support the verdict asked of the jury, the court should grant judgment as a matter of law. See id.
 
 
 11
 In this case, HFAA argues that judgment as a matter of law was properly granted because Appellants submitted no evidence of any contractual provision requiring it to publish accurate sire summaries. HFAA's contention is that the only possible breach of contract occurred when the certificate containing the incorrect number was issued in August 1983, rendering the claim barred by the statute of limitations.
 
 
 12
 Although Appellants concede that they did not present evidence regarding the HFAA's duty to publish accurate sire summaries, they argue that a breach of contract cause of action does not accrue until the breach causes at least slight consequential injury or damage. Appellants base the breach of contract action on the language in the registration certificate requiring the HFAA to carry the records of Lucas under the registration number 1902 539, and argue that the HFAA continuously breached this contract by carrying Lucas's records in the computer under a different number than was printed on the certificate. Under this theory, Appellants contend that the HFAA breached the contract every time it credited Lucas's records to Sarge, since according to the registration certificate, Lucas should have been listed in the computer as 1902 539. Because Appellants were not dam aged by this continuous breach until January 1988, when Lucas failed to receive his first bull proof, they contend that the statute did not begin to run until that time. To resolve this issue properly, we must determine whether the Virginia statute of limitations began to run on the date the HFAA issued the registration certificate, as claimed by HFAA, or at the time Lucas failed to receive his first bull proof, as argued by Appellants. If Appellants' breach of contract cause of action was indeed barred by the statute of limitations, the dismissal was clearly proper.
 
 
 13
 Under Virginia law, the limitations period for breach of a written contract is five years. Va.Code Ann. Sec. 8.01-246. The language of the Virginia statute of limitations states that "the prescribed limitation period shall begin to run ... when the breach of contract or duty occurs in the case of damage to property and not when the resulting damage is discovered...." Va.Code Ann. Sec. 8.01-230 (Michie 1992). The Virginia Supreme Court has strictly enforced the plain language of this statute, holding that it begins to run on the date the contract is breached, regardless of when the plaintiff becomes aware of the breach. For example, in Harbour Gate Owners' Ass'n v. Berg, 348 S.E.2d 252, 255 (Va.1986), a condominium unit owners' association brought a breach of warranty action because of a structural defect in the roof. Although the damage was not discovered until several years after the building was constructed, the court held that the statute of limitations began to run when the first condominium unit was conveyed, and not when the damage was discovered. Id. at 258. The court noted that Virginia law previously provided that, when a breach of duty preceded the damage to property, no cause of action accrued until the damages were discovered. Id. at 257-58. The Virginia General Assembly, however, adopted the statutory language quoted above in 1977, which "materially change[d] the rule ... with respect to property damage actions." Id. at 258. In regard to this new language the court stated:
 
 
 14
 It seems unlikely that the revisors intended the harsh result dictated by its clear language: in a property damage case where the breach of duty precedes the resulting injury or damage, the property owner's right to sue may be barred before his property suffers any injury or damage. Indeed, as here, any right of action may be barred before he becomes an owner of the property. It is not our function to amend the law, however, and we must leave to the General Assembly any consideration of change.
 
 
 15
 Id. at 258 n. 3.
 
 
 16
 Despite this clear invitation for the General Assembly to adopt a discovery rule, it has declined to do so, and Virginia courts have continued to construe the limitation statute strictly. For example, Westminster Investing Corp. v. Lamps Unlimited, Inc., 379 S.E.2d 316, 317 (Va.1989), involved a shopping center tenant who brought suit against the landlord, alleging that the landlord breached the lease agreement by failing to enforce uniform hours of operation among all of the tenants. The tenant brought suit approximately nine years after it first entered into the lease, but argued that because the landlord continuously breached the contract, it could still recover any damages suffered within the five years before bringing the lawsuit. Id. The Virginia Supreme Court rejected the continuous breach theory, holding that the language of Sec. 8.01-230 is absolute and allows for no exceptions. Id. at 319. Accordingly, the court held that the contract was breached the first time the landlord failed to enforce uniform hours, rendering the tenant's suit barred by the statute of limitations. Id.
 
 
 17
 We find that the applicable Virginia law clearly requires us to affirm the district court's dismissal of this case. Although Appellants argue that the HFAA breached the contract every time it credited Lucas's records to Sarge, under Virginia law, the statute of limitations clearly began to run the first time the contract was breached. In this case, there is no dispute that the HFAA first breached the contract in August 1983 when it issued the registration certificate containing the erroneous number. Because Appellants did not file this lawsuit until 1991, it is undoubtedly barred under the statute.
 
 
 18
 We agree with Appellants that this is a harsh result, particularly because they had no reason to check the accuracy of Lucas's number before they failed to obtain a bull proof in January 1988. As the Virginia Supreme Court noted in Harbour Gate, 348 S.E.2d at 258 n. 3, however, the language of the statute is unmistakably clear, and we must leave any amendment of the law to the General Assembly.
 
 III.
 
 19
 For the aforementioned reasons, we conclude that the district court properly dismissed Appellants' claim as barred by the applicable statute of limitations. Accordingly, the decision of the district court is affirmed.
 
 
 20
 AFFIRMED.
 
 
 
 *
 Bull proofs are published by the USDA in January and July of each year