46 F.3d 1124
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
THE INSURANCE COMPANY OF NORTH AMERICA, Plaintiff-Appellant,
v.
H. R. ASHE, INCORPORATED, t/a American Eastern; H. R. Ashe;
Beverly Siglinger, Defendants-Appellees.
 No. 94-1894.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 7, 1994.
Decided Jan. 17, 1995.
 
 Robert William Ludwig, Jr., Washington, D.C., for Appellant.
 Donald L. Moore, Hampton, VA, for Appellees.
 Chrys D. Lemon, MCNAIR & SANFORD, P.A., Washing ton, D.C., for Appellant.
 Bennett L. Stein, STEIN & SMITH, Newport News, VA, for Appellees.
 Before WILKINS and WILLIAMS, Circuit Judges, and LAY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The Insurance Company of North America (INA) appeals a decision of the district court granting summary judgment in favor of H. R. Ashe, Incorporated, t/a American Eastern (American Eastern), H. R. Ashe, and Beverly Siglinger in INA's action for reimbursement under an indemnification agreement. The district court concluded that the action was barred by the applicable statute of limitations. We agree and affirm.
 
 I.
 
 2
 Virginia Electric and Power Company (Vepco) awarded two construction contracts to American Eastern. INA agreed to act as surety for both contracts and issued bonds on American Eastern's behalf. On September 17, 1980, American Eastern, Ashe, and Siglinger[1] executed an Agreement of Indemnity with INA (1980 Agreement), promising in pertinent part to reimburse INA for any "losses and/or expenses" it incurred as a result of default by American Eastern.
 
 
 3
 Although American Eastern encountered problems completing the construction projects, it was allowed to remain as contractor after C. L. Willis, Inc. was brought in to manage the work. Over American Eastern's objections, INA subsequently replaced C. L. Willis, Inc. with Contract Security Consultants (CSC). INA paid CSC's consulting fees totalling $72,315.05 on November 27, 1984. Although INA had been informed by American Eastern that it would refuse to reimburse INA for the CSC fees, INA made a series of demands for reimbursement under the 1980 Agreement.
 
 
 4
 Soon thereafter, American Eastern experienced difficulties completing two other construction contracts it had been awarded on Langley Air Force Base (Langley contracts), both of which were also bonded by INA. In an attempt to avoid default, American Eastern enlisted INA to convince the government agencies responsible for the projects to allow American Eastern to complete construction. American Eastern wrote the following to INA by letter dated August 23, 1985:
 
 
 5
 American Eastern will, within thirty days of the consummation of a takeover agreement permitting American Eastern to proceed with construction on the above projects under the terms provided herein, pay INA the amounts recently invoiced for funds expended by INA for [CSC].... If no takeover agreement is consummated under the above contracts, American Eastern agrees to pay the above mentioned invoice from [CSC] in the amount of $72,315.05, upon Vepco's approval and payment of such amount as part of American Eastern's claim against Vepco. However, nothing herein shall be construed as a waiver of INA's rights under the Agreement of Indemnity. INA will cooperate and do nothing to interfere with American Eastern in the prosecution of its claims against Vepco.
 
 
 6
 INA crossed through the words "cooperate and," signed the letter, and returned it to American Eastern (1985 Letter Agreement). Thus, although it consistently maintained that it had no duty to reimburse INA for the CSC fees, American Eastern nevertheless agreed to pay the fees in exchange for INA's assistance with the Langley contracts, provided that one of two conditions occurred: (1) American Eastern was permitted to proceed with construction under both Langley contracts or (2) Vepco approved and paid the CSC fees.
 
 
 7
 Neither of these conditions was met: American Eastern was allowed to continue with only one Langley contract and Vepco never paid the CSC fees. With respect to the second condition, American Eastern filed suit against Vepco for the CSC fees and other costs American Eastern believed it was owed under the Vepco contracts after negotiations between them failed. American Eastern informed INA of the lawsuit in March 1987. When INA inquired about the status of the lawsuit after several months had passed, American Eastern replied that it was preoccupied with other affairs and would concentrate on the matter later. INA again sought information concerning the status of the lawsuit against Vepco in three letters to American Eastern dated between November 1988 and February 1989, but American Eastern failed to respond. Thereafter, INA wrote to American Eastern on June 22, 1989, stating that "[i]t is now time to make some arrangement to reimburse [INA]."[2] After repeated attempts to obtain payment, INA brought this action on October 7, 1993.
 
 
 8
 The district court granted summary judgment for American Eastern, Ashe, and Siglinger, holding that the action was barred by the statute of limitations. The court first concluded that the applicable statute of limitations for written contracts under Virginia law is five years, see Va.Code Ann. Sec. 8.01-246(2) (Michie 1992), and that the limitations period began to run from the date of the breach of the contract, see Va.Code Ann. Sec. 8.01-230 (Michie 1992). Because American Eastern had previously expressed its intention not to reimburse INA for the CSC fees, the statute of limitations began to run at least by the date INA made final payment of the CSC fees, November 27, 1984. Further, the court ruled that the statute was not tolled by the 1985 Letter Agreement or by equitable estoppel. Thus, the district court held that the limitations period for an action on the 1980 Agreement expired on November 27, 1989, approximately four years before this suit was filed.
 
 II.
 
 9
 INA principally argues on appeal that the 1985 Letter Agreement modified the 1980 Agreement by deferring American Eastern's duty to reimburse INA under the 1980 Agreement until one of the two specified conditions was satisfied or both failed. INA maintains that the statute of limitations did not begin to run until at least June 22, 1989, the date of INA's letter to American Eastern demanding reimbursement. Thus, INA contends, its action filed on October 7, 1993 is timely.
 
 
 10
 INA is correct that the statute of limitations does not begin to run on a conditional contract until the conditions are satisfied. See Salomonsky v. Kelly, 349 S.E.2d 358, 360 (Va.1986). However, INA's argument lacks merit because, as the district court ruled, the 1985 Letter Agreement did not modify the 1980 Agreement. Rather, the district court properly construed the 1985 Letter Agreement as a separate contract with separate consideration, i.e., an agreement to pay $72,315.05 upon the occurrence of specified conditions in exchange for INA's assistance with the Langley contracts. The 1985 Letter Agreement expressly reserved all of INA's rights under the 1980 Agreement; among those rights was the right to sue American Eastern for any breach of the 1980 Agreement. Thus, the district court correctly concluded that the 1985 Letter Agreement did not modify the 1980 Agreement such that the statute of limitations began to run on the 1980 Agreement on June 22, 1989.[3]
 
 
 11
 INA also argues that American Eastern should be equitably estopped from asserting the statute of limitations as a defense to its suit on the 1980 Agreement due to the 1985 Letter Agreement, as well as other conduct by American Eastern, which INA claims tolled the statute of limitations temporarily. The district court erred in granting summary judgment, INA contends, because at a minimum it has presented sufficient evidence to raise a genuine issue of material fact concerning the application of principles of equitable estoppel.
 
 
 12
 The statute of limitations is generally absolute, except "under certain extraordinary circumstances wherein ... equitable estoppel preclude[s] its application." Westminster Investing Corp. v. Lamps Unlimited, Inc., 379 S.E.2d 316, 318 (Va.1989). But, we need not resolve whether the district court properly held that the limitations period was not tolled because even if INA is correct that the limitations period was tolled by equitable estoppel, the action was untimely. The statute of limitations for the alleged breach of the 1980 Agreement began to run at least by November 27, 1984. INA concedes that it is appropriate for this court to find that the tolling ended when INA demanded reimbursement in its letter of June 22, 1989. Thus, assuming that the limitations period was tolled from August 23, 1985--the date of the 1985 Letter Agreement--to June 22, 1989, the five-year statute of limitations still expired before this suit was filed on October 7, 1993.
 
 
 13
 We have carefully considered all of the other arguments presented by INA and find them to be without merit.
 
 AFFIRMED
 
 
 [1]
 Ashe was President of American Eastern; Siglinger was Ashe's wife
 
 
 [2]
 American Eastern dismissed its litigation against Vepco sometime in 1989; however, Vepco never approved or paid the CSC fees
 
 
 [3]
 Of course, because the statute of limitations had not run with respect to INA's rights under the 1985 Agreement, its claim that American Eastern had breached this agreement was properly before the court. However, summary judgment was nevertheless proper with respect to this claim because it is undisputed that both of the conditions failed and INA did not present any evidence from which a reasonable trier of fact could conclude that American Eastern failed to act in good faith in its efforts to convince Vepco to approve and pay the CSC fees