PRESENT: Kinser, C.J., Lemons, Goodwyn, Millette, McClanahan, and Powell, JJ., and Lacy, S.JJ.

VERBENA ASKEW

OPINION BY
v.  Record No. 110323        ELIZABETH A. McCLANAHAN
                              March 2, 2012
BRENDA COLLINS

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND JAMES CITY COUNTY
Walter J. Ford, Judge

In this appeal, we consider whether the Circuit Court of the City of Williamsburg and James City County erred when it: (1) refused to set aside the jury's verdict against Verbena Askew ("Askew"); and (2) refused to apply Code § 8.01-35.1 to reduce the amount of the judgment.

In 2004, Brenda Collins filed a motion for judgment against Verbena Askew, a former circuit court judge, The Daily Press, Inc., and a City of Hampton employee, alleging defamation and breach of contract.  She later filed an amended complaint which included the City of Hampton as a defendant, and added claims for conspiracy to tortiously interfere with a contract and for common law conspiracy.  During the course of litigation, Collins settled with the City of Hampton employee, The Daily Press, and the City of Hampton, and received $120,000 in proceeds from those defendants.

The case proceeded to trial against Askew only on claims of defamation, breach of contract, and conspiracy.  The jury

returned a verdict in Collins' favor on the defamation claim based on one discrete statement made by Askew to The Daily Press on January 8, 2003.[1] Askew moved the trial court to set aside the verdict, or to reduce it by the sums Collins had already received from the other defendants, arguing that a reduction was required by Code § 8.01-35.1. The trial court denied the motion, finding evidence sufficient to support the jury's finding. The trial court refused to reduce the judgment against her by the amount of the settlements. A final order was entered awarding a judgment to Collins in the amount of $350,000 with interest. On appeal, Askew challenges the trial court's judgment refusing to set aside the jury verdict and to reduce the judgment against her. We will affirm its judgment.

Askew presided over the drug treatment court in which Collins previously worked in the City of Hampton. In 1999, Collins lodged a complaint of sexual harassment against Askew and the City of Hampton. In 2001, Askew signed a letter of understanding obligating her not to make any disparaging comments or statements about Collins' conduct or character and to maintain confidentiality.

---

[1] The jury also ruled in Collins' favor on the breach of contract claim. The jury ruled in Askew's favor on the conspiracy claim. Neither of these claims is at issue on appeal.

In early 2003, when Askew was being considered for reappointment, a member of the General Assembly requested information concerning a rumored settlement involving Askew. The settlement agreement between Collins and Askew and a copy of the Equal Employment Opportunity Commission ("EEOC") charge against Askew were eventually produced to the General Assembly member with Collins' name redacted. Pursuant to a subsequent subpoena, all of the documents relating to Collins' EEOC complaint were produced to the legislature without any redactions.

Evidence was presented to show that several of the documents were also released to The Daily Press. On January 8, 2003, Askew spoke to two Daily Press reporters and made a statement that "Collins was institutionalized - that's the only way you qualify for family leave."[2]

At trial, Collins offered testimony about her career at the drug treatment court, her sexual harassment claim against Askew, and the settlement. She explained to the jury how she was affected after The Daily Press published the January 21, 2003 article concerning her mental state and accusing her of lying when she filed the EEOC claim. She also talked about Askew's

_____

[2] Although seven statements made by Askew were presented to the jury on the verdict form, the jury only found in Collins' favor as to the one statement that Collins had been institutionalized. None of the other statements are relevant to this appeal.

3

statement to the reporters on January 8th that Collins was institutionalized and how she believed the statement was restated to others. Collins acknowledged that the statement was not published in the article. However, evidence was presented that the staff of The Daily Press reviewed the statement made by Askew to the reporters and discussed it during the meetings prior to publication of the article.

On appeal, Askew assigns error to the judgment of the trial court on the grounds that (i) the court erred in refusing to set aside the jury's verdict because the evidence established that Askew's statement did not proximately cause Collins' claimed damages; and (ii) the court erred in refusing to apply Code § 8.01-35.1 to reduce the amount of the judgment.

Askew contends the trial court should have set aside the jury verdict as to Collins' defamation claim because the defamatory statement upon which the jury found in Collins' favor and awarded damages did not appear in The Daily Press article, and thus, could not have proximately caused Collins' damages. We disagree.

A private individual may recover actual, compensatory damages for a defamatory publication "upon proof by a preponderance of the evidence that the publication was false, and that the defendant either knew it to be false, or believing it to be true, lacked reasonable grounds for such belief, or

4

acted negligently in failing to ascertain the facts on which the publication was based."  The Gazette, Inc. v. Harris, 229 Va. 1, 15, 325 S.E.2d 713, 724-25 (1985).

"It is difficult, if not impossible, to prove with mathematical precision the quantum of damages for injury to reputation, humiliation, and embarrassment which may flow from a defamation.  For this reason, the common law, as early as 1670, modified the usual standard of proof of damages in those cases where the words uttered were actionable per se."  Great Coastal Express, Inc. v. Ellington, 230 Va. 142, 148, 334 S.E.2d 846, 850 (1985).  "[I]f the published words are determined . . . to be actionable per se at common law, compensatory damages for injury to reputation, humiliation, and embarrassment are presumed."  Id. at 151, 334 S.E.2d at 852.  "At common law, defamatory words which are actionable per se [include] . . . [t]hose which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment."  Id. at 146-47, 334 S.E.2d at 849.

The instruction for per se defamation was given to the jury, without objection from Askew, and she does not challenge the instruction on appeal.  Collins presented evidence that Askew knew her statement was false, or at a minimum that Askew lacked reasonable grounds for this belief or otherwise

5

negligently failed to ascertain facts in support of the defamatory statement. Neither this evidence nor the court's finding that the statement was defamatory per se is challenged by Askew on appeal. Thus, as a matter of law, the jury needed no proof of damages suffered by Collins on which to predicate its compensatory award based upon the per se defamation negligently published by Askew. The reputational damage to Collins resulting from Askew's statement was properly presumed, and the jury's award of compensatory damages to Collins was appropriate under established common law principles for per se defamation. Accordingly, the trial court did not err in refusing to set aside the verdict.

Secondly, Askew contends that under Code § 8.01-35.1, she is entitled to an offset of the judgment for settlement amounts paid to Collins by other defendants prior to trial. We disagree.

Code § 8.01-35.1(A)(1) states that

> [w]hen a release or a covenant not to sue is given in good faith to one of two or more persons liable for <u>the same injury</u> to a person or property, . . . [i]t shall not discharge any other person from liability for the injury . . .; but any amount recovered against the other person or any one of them shall be reduced by any amount stipulated by the covenant or release.

(emphasis added).

Askew contends that until the Daily Press article was published on January 21st, Collins had no damages.[3] This assertion ignores the prior defamatory statement made by Askew on January 8th.

Any cause of action that a plaintiff has for defamation accrues on the date that the defamatory acts occurred. Jordan v. Shands, 255 Va. 492, 498, 500 S.E.2d 215, 218 (1998). Collins' defamation action accrued as a matter of law when Askew made the per se defamatory statement to The Daily Press reporters on January 8th. Id. (citing Westminster Investing Corp. v. Lamps Unlimited, 237 Va. 543, 546, 379 S.E.2d 316, 317–18 (1989) and Caudill v. Wise Rambler, 210 Va. 11, 14-15, 168 S.E.2d 257, 260 (1969)). Accordingly, Collins' emotional and reputational injury resulting from Askew's statement was suffered upon Askew's publication of the statement to the reporters on that date. This statement, for which Askew was found liable by the jury, was never alleged to have been made by any other defendant. The injury resulting from the statement was separate and distinct from the injury resulting from the publication of the newspaper article on January 21st, therefore making Code § 8.01-35.1(A) inapplicable in this case. Thus, the

---

[3] Askew's assertion that Collins attributed all of her damages to the publication of the article in reliance on an exchange between Collins and Askew's counsel is taken out of context. The statement is not an affirmative disavowal and does not rebut the presumption.

7

trial court did not err in refusing to apply Code § 8.01-35.1 to reduce the amount of the judgment against Askew.

For the reasons stated above, we conclude that the trial court did not err in refusing to set aside the jury's verdict or in refusing to apply Code § 8.01-35.1 to reduce the amount of the judgment.  We will affirm the judgment of the circuit court.

<u>Affirmed</u>.