INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, an Illinois Corporation, Plaintiff–Appellant,

v.

MARSH & McLENNAN, INCORPORATED, a Delaware Corporation, Defendant–Appellee.

and

MARSH & McLENNAN, INCORPORATED, a Virginia corporation, Defendant–Appellee,

v.

CITY OF RICHMOND, a municipal corporation, Third Party Defendant.

No. 87–2572.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 3, 1987.

Decided Feb. 1, 1988.

Frank B. Miller, III (S. Vernon Priddy, III, John B. Catlett, Jr., Sands, Anderson,

---

Marks & Miller, Richmond, Va., on brief), for plaintiff-appellant.

William Beverly Poff (Thomas A. Leggette, Richard C. Maxwell, Frank K. Friedman, Elizabeth K. Hillman, Woods, Rogers & Hazelgrove, Roanoke, Va., on brief) for defendants-appellees.

Before CHAPMAN, and
WILKINSON, Circuit Judges, and
BOYLE, United States District Judge
for the Eastern District of North
Carolina.

CHAPMAN, Circuit Judge:

Plaintiff International Surplus Lines Insurance Company ("ISLIC") appeals the order of the district court granting summary judgment to defendants, Marsh & McLennan, Inc. and Marsh & McLennan, Incorporated ("Marsh & McLennan"). ISLIC sued Marsh & McLennan, an insurance broker,[1] seeking indemnification for monies ISLIC paid to the City of Richmond on a disputed claim under a liability insurance policy. ISLIC alleges that Marsh & McLennan breached certain fiduciary duties it owed ISLIC in connection with the City's efforts to obtain increased liability coverage and, therefore, it should indemnify ISLIC for the increased amounts paid to the City in settlement of the claim. The district court held that ISLIC's claims were not properly brought as claims for indemnity and that the applicable contract and tort statutes of limitations bar ISLIC's claims for breach of fiduciary duties. We affirm.

I

In the Spring of 1980, the executive director of the Insurance Advisory Committee ("IAC") of the City of Richmond spoke with three different insurance brokers regarding the procurement of public officials' and employees' liability insurance coverage. Marsh & McLennan, a surplus lines broker, was one of these brokers. After unsuccessful contacts with various carriers

licensed to do business in Virginia, Marsh & McLennan contacted unlicensed carriers, including ISLIC, which through its licensed managing general agent, L.W. Biegler, Inc., provided a quotation on a policy with ISLIC. Based on IAC's recommendations, the City authorized IAC to obtain coverage from ISLIC. Effective July 1, 1980, ISLIC issued the City a one-year public officials' and employees' liability policy with coverage of one million dollars.

ISLIC renewed the policy on July 1, 1981. In September or October of 1981, the City requested higher limits on the public officials' coverage. ISLIC requested a warranty letter from the City as to the existence of any claims against the City. The Acting City Attorney, William Hefty, forwarded such a letter to Marsh & McLennan. The "Hefty letter" stated, in pertinent part:

> I have no knowledge, as of [October 29, 1981], of any claims or pending claims against the City of Richmond, its elected or appointed officials or other members of the City government....
>
> The above does not apply to threats of litigation which may rise to the level of an actual claim or pending litigation at some point in the future.

Marsh & McLennan advised the City that the letter was vague and may raise some question about the possibility of claims. In response, the Acting City Risk Manager, James Dellaripa, forwarded the "Dellaripa letter," which authorized IAC to increase coverage of the 1981 policy to five million dollars and contained, in response to Marsh & McLennan's request, a postscript that stated he had "no knowledge of any claims or pending claims against the City of Richmond." Only the "Dellaripa letter" was forwarded to Biegler, ISLIC's agent. The increased coverage became effective October 29, 1981.

By August, 1981 the City was embroiled in a controversy with a group of developers who planned to construct a Hilton Hotel in

---

**1.** Marsh & McLennan was operating under surplus lines brokers licenses issued by the State Corporations Commission of the Commonwealth of Virginia pursuant to Va.Code § 38.1–327.46 *et seq.* (1950). This section of the Code of Virginia has since been repealed and reenacted at Va.Code § 38.2–4800 *et seq.* (1986).

downtown Richmond. Then Richmond Mayor Henry L. Marsh, III believed that the proposed Hilton would jeopardize the City's Downtown Redevelopment Area, Project One. On November 9, 1981, the Hilton developers filed an application for a building permit and their plan of development for the Hilton Hotel in the City. The City's Director of Planning, Charles T. Peters, Jr., met with the Hilton developers to review their plan of development, and on November 25, 1981, told the Hilton developers that he had disapproved their plan. On December 8, 1981, Peters issued a report denying the Hilton developers' plan.

On December 23, 1981, the Hilton developers filed suit against the City. The City transmitted notice of the Hilton lawsuit to Marsh & McLennan, which forwarded it to ISLIC. In July, 1983 the City reached a settlement with the Hilton developers.[2] ISLIC contributed one million dollars, the amount of the initial policy limit, to the settlement.

On December 7, 1984, seventeen months after the settlement, the City filed suit against ISLIC in the Virginia state courts to recover under the four-million-dollar increased limits endorsement. ISLIC attempted to sue Marsh & McLennan in the state court proceeding, but the City objected and the state court refused to permit filing of the third party complaint. ISLIC settled with the City, paying an additional 1.75 million dollars.

## II

ISLIC alleges Marsh & McLennan breached its fiduciary duties owed to ISLIC by withholding information material to ISLIC's decision whether to increase the limits on the City's public officials' and employees' liability policy from one million dollars to five million dollars. Specifically, by suppressing the "Hefty letter" and forwarding only the "Dellaripa letter," ISLIC alleges that Marsh & McLennan fraudulently misrepresented the status of claims against the City. ISLIC argues that it is entitled to indemnification from Marsh & McLennan for the amounts paid to the City beyond the original one million dollars of coverage on its policy.

While indemnification is usually appropriate in a situation when the duty discharged or breached (here, the obligation to pay the City) is owed by one (here, ISLIC), but which, as between that one and another (here, Marsh & McLennan), should have been discharged by the other, 41 Am.Jur.2d *Indemnity* § 1 (1968), ISLIC urges this court to apply indemnity when the duty allegedly breached was owed only by Marsh & McLennan to ISLIC and not to a third party, the City.

As the Second Circuit recognized in *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346 (2d Cir. 1986), "an action 'does not become an action for indemnity merely because the pleader has so denominated it.' (Citation omitted)." *Goodpasture*, 782 F.2d at 350. We must first determine whether ISLIC's causes of action are indeed indemnity claims, not time barred, or whether the claims are merely contract or tort claims and barred by the applicable statutory periods.

It is uncontroverted that there is no express indemnity agreement between ISLIC and Marsh & McLennan. Therefore, ISLIC relies on *Goodpasture* to support the argument that an implied right to indemnification arises under the facts of this case.

When, as here, there is no express agreement creating a right to indemnification, an implied right to indemnification can still be found in either of two sets of circumstances. (Citation omitted). In one, an implied right to indemnification may be based on the special nature of a contractual relationship between parties. *See, e.g., Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 133–34, 76 S.Ct. 232, 237–38, 100 L.Ed. 133 (1956). This has been called an 'implied contract theory' of indemnity, (citation omitted), or an 'implied in fact' indemnity, (citation omitted). A second set of circumstances in which indemnity may be

---

**2.** The record does not disclose the exact terms or amount of this settlement. Apparently, the suit was settled for an amount in excess of $1 million.

found has been called 'implied in law' indemnity. (Citation omitted). This is a tort-based right to indemnification found when there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other. (citations omitted).

*Goodpasture,* 782 F.2d at 351. ISLIC does not challenge the district court's conclusions that there is no express indemnity agreement and that there is no tort-based indemnity between ISLIC and Marsh & McLennan. Therefore, we must only decide whether there is a special contractual relationship between the parties that gives rise to an implied right to indemnification.

■ As the district court noted, if an agency agreement existed between ISLIC and Marsh & McLennan, it was unwritten. What is clear, however, is that the City contacted Marsh & McLennan, which sought insurance carriers to provide quotations on a policy for the City. To this extent, Marsh & McLennan was acting as an agent for the City. During the time in question, Marsh & McLennan also acted as a conduit for information between the City and ISLIC.

The facts of *Ryan Stevedoring Co. v. Pan–Atlantic S.S. Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the seminal case [3] involving an implied right of indemnification, stand in sharp contrast. There, a longshoreman employed by Ryan Stevedoring was injured in the course of his employment on shipboard when an improperly stowed cargo roll broke loose. He sued the shipowner, whose cargo officers had supervised the loading and had authority to reject unsafe stowage. The shipowner then impleaded the stevedoring company, whose longshoremen had loaded the ship. The Supreme Court held that the shipowner had an implied contractual right to indemnity for the damages paid to the injured longshoreman since the stevedoring company

had agreed to perform all the shipowner's stevedoring operations. *Ryan,* 350 U.S. at 133, 76 S.Ct. at 237. Because of the non-delegable duties imposed in maritime law by the seaworthiness doctrine, the stevedoring company's negligent injury of the longshoreman was also a breach of its contractual duties to the shipowner. *Maritime Overseas Corp. v. Northeast Petroleum Indus.,* 706 F.2d 349, 353 (1st Cir.1983); *see also Smith Petroleum Serv., Inc. v. Monsanto Chem. Co.,* 420 F.2d 1103, 1109 n. 9 (5th Cir.1970).

Nothing in the instant case gives rise to a special contractual relationship in the way maritime law gave rise to the special relationship between the shipowner and the stevedoring company in *Ryan.* Furthermore, there is no duty of Marsh & McLennan to the City which was breached causing injury to the City. ISLIC made payments to the City under the disputed coverage of the liability insurance policy, not because of the breach of some duty owed the City by Marsh & McLennan.

This court found the type of special contractual relationship giving rise to an implied right of indemnification in *General Electric Co. v. Moretz,* 270 F.2d 780 (4th Cir.1959), *cert. denied,* 361 U.S. 964, 80 S.Ct. 593, 4 L.Ed.2d 545 (1960). In *Moretz,* a truck driver, injured when the load shifted and the truck wrecked, sued the shipper, who had negligently loaded the truck. The shipper sought indemnity from the common carrier, which had failed to secure the load properly. We found that under applicable Virginia law, certain relevant federal statutes and Interstate Commerce Commission regulations should be read into and made a part of the contract between the shipper and the carrier. These provisions established the special contractual relationship which supported the shipper's claim for an implied right of indemnity. As in *Ryan,* there was a unique element to the contrac-

3. The result in *Ryan* was overruled by the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972. *See* 33 U.S.C. § 905 (1982); *see also Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 198, 103 S.Ct. 1033, 1038, 74 L.Ed.2d 911 (1983); *Bloomer v. Liberty Mut.*

*Ins. Co.,* 445 U.S. 74, 83, 100 S.Ct. 925, 930, 63 L.Ed.2d 215 (1980); *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 262, 99 S.Ct. 2753, 2757, 61 L.Ed.2d 521 (1979); *Ducrepont v. Baton Rouge Marine Enter., Inc.,* 666 F.Supp. 882 (E.D.La.1987).

tual relationship which gave rise to the implied right to indemnity.

There is no such unique element in the relationship between ISLIC and Marsh & McLennan. Viewed in the light most favorable to ISLIC, the relationship was an ordinary insurance brokerage arrangement. While Marsh & McLennan may have owed some fiduciary duties both to the City and to ISLIC, there was nothing in the arrangement or in the parties' dealings from which an indemnity agreement could be implied. If an implied contract for indemnification were found here, it is possible that every insurance broker would, in effect, become an insurer. Such a result would do violence to existing indemnity law. We conclude there could be no implied contract for indemnity in this case.

### III

Since ISLIC's breach of fiduciary duty claims are not to be considered as claims for indemnity, we must determine whether they have been brought within the applicable statute of limitations. As the district court noted, under Virginia law, which governs the resolution of this issue, the applicable limitations period is determined by the nature of the cause of action. According to the *Restatement (Second) of Agency* § 401 comment a (1958), a claim for breach of fiduciary duty may be characterized as either a contract or tort action.

### A.

■ Since there is no written contract between ISLIC and Marsh & McLennan, we must apply the three-year limitation period for oral contracts in analyzing ISLIC's claim as a breach of contract. Va. Code § 8.01–246(4) (1984).[4] Under Va.Code § 8.01–230 (1984),[5] the limitation period began to run at the time of the breach. ISLIC alleges that Marsh & McLennan misrepresented the status of claims against the City by suppressing the "Hefty letter" and forwarding only the "Dellaripa letter". This occurred in October or November of 1981; therefore, the statutory period expired in 1984. If these claims, filed in October 1985, are analyzed as breach of contract claims, they are clearly barred.

### B.

■ Analyzing the breach of fiduciary duty claims as a tort, the applicable statute of limitations is one year. Va.Code § 8.01–248 (1984).[6] In Virginia, the statutory period begins to run when the breach was, or should have been, discovered by the plaintiff. Va.Code § 8.01–249(1) (Supp. 1987).[7] Uncontroverted evidence establishes that ISLIC had knowledge of the "Hefty letter" by mid-April 1983, and the district court properly concluded that ISLIC's claims were also barred by the tort statute of limitations.

To avoid this bar, ISLIC argues that the cause of action did not accrue until December 7, 1984, when the City brought suit in state court to collect on the increased limits endorsement, and such suit, filed in October 1985, would be timely.

---

**4.** Va.Code § 8.01–246(4) provides in part:

[A]ctions founded upon a contract, other than actions on a judgment or decree, shall be brought within the following number of years next after the cause of action shall have accrued:

\*   \*   \*   \*   \*   \*

4. In actions upon any unwritten contract, express or implied, within three years.

**5.** Va.Code § 8.01–230 provides in pertinent part:

In every action for which a limitation period is prescribed, the cause of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person, when the breach of contract or duty occurs in the case of damage to property

and not when the resulting damage is discovered, . . . .

**6.** Va.Code § 8.01–248 provides:

Every personal action, for which no limitation is otherwise prescribed, shall be brought within one year after the right to bring such action has accrued.

**7.** Va.Code § 8.01–249(1) provides:

The cause of action in the actions herein listed shall be deemed to accrue as follows: 1. In actions for fraud, or mistake, and in actions for recision of contract for undue influence, when such fraud, mistake, or undue influence is discovered or by the exercise of due diligence reasonably should have been discovered; . . . .

It is true that "in the absence of injury or damage to a plaintiff or his property, he has no cause of action and no right of action can accrue to him." *Caudill v. Wise Rambler, Inc.*, 210 Va. 11, 168 S.E.2d 257, 259 (1969). Indeed we have noted that "[a] right of action cannot accrue until there is a cause of action." *Sides v. Richard Mach. Works, Inc.*, 406 F.2d 445, 446 (4th Cir.1969). The instant case presents the rather unusual situation of injury or damages which are not readily apparent at the time the alleged breach of contract was discovered. Here the injury occurred well before the alleged breach was discovered. When the Hilton developers brought suit against the City in December, 1981, the City notified ISLIC of the suit and demanded five million dollars in coverage. ISLIC set aside a reserve and began investigating the claim. Beginning in 1982, ISLIC also incurred attorneys fees relating to the claim by the City.

In Virginia, only the slightest injury is required to start the running of the limitations period. *Richmond Redev. & Hous. Auth. v. Laburnum Constr. Corp.*, 195 Va. 827, 839, 80 S.E.2d 574, 581 (1954). In *Laburnum,* the plaintiff alleged breach of warranties and fraud when defects in materials and workmanship caused an explosion, five years after the work was completed. The court held that the cause of action accrued when the breach of warranties occurred because the property was damaged to some extent at that time.

> [W]here an injury, though slight, is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy therefor the statute of limitations attaches at once. It is not material that all the damages resulting from the act should have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date.

*Laburnum,* 195 Va. at 839, 80 S.E.2d at 581. As the district court noted, in the instant case injury was incurred when the City first made demand upon ISLIC under the liability insurance policy. *See American Indem. Co. v. Ernst & Ernst,* 106 S.W.2d 763 (Tex.Civ.App.1937). It is of no consequence that the amount of damages was not ascertainable until a later date.

Since injury was incurred and damages began to accrue before ISLIC discovered the alleged breach, ISLIC's cause of action was complete upon discovery of the existence of the "Hefty letter." Therefore, the breach of fiduciary duty claim is barred by the tort statute of limitations. This result is consistent with the Virginia statute of limitations scheme, which focuses on when a plaintiff should act, by starting the running of the statute on *discovery* of the breach. Va.Code § 8.01–249.

## IV

We agree with the district court's conclusion that ISLIC's breach of fiduciary duty claims were not properly brought as claims for indemnity and that the applicable contract and tort statutes of limitation bar the claims. Therefore, the order granting summary judgment to Marsh & McLennan was proper and we affirm.

AFFIRMED.