# CIRCUIT COURT OF BUCKINGHAM COUNTY

Curtis Dixon Colgate et al.

v.

The Disthene Group, Inc., et al.

February 4, 2013

Case No. CL 10-158

By JUDGE JANE MARUM ROUSH

This matter came on to be heard on August 2, 2012, on the defendants' demurrer and plea in bar and the plaintiffs' opposition thereto. At the time, the court took the matter under advisement. For the following reasons, the demurrer will be sustained in part and overruled in part, and the plea in bar will be sustained in part and overruled in part.

*Background*

The plaintiffs in this case are Curtis Dixon Colgate ("Curtis"), Sharon Marie Newcomb ("Sharon"), Marion J. Colgate, Sr. ("Boyd"), and Peaceful Valley, Limited Partnership ("Peaceful Valley"). Also plaintiffs are The Disthene Group, Inc. ("Disthene"), and its subsidiaries, Kyanite Mining Corporation ("Kyanite"), the Cavalier Hotel Corporation ("Cavalier Hotel"), and Blue Rock Resources, L.L.C. ("Blue Rock"). Although Disthene and its subsidiaries were realigned from nominal defendants to nominal plaintiffs by an order entered on January 15, 2013, to date, the caption of the case has not been amended to reflect the realignment. (Disthene and its subsidiaries shall collectively be referred to as the "Company.") By decree of this court dated September 6, 2012, in the related case of *Colgate v. The Disthene Croup. Inc.*, Case No. CL11-117 (Circuit Court of Buckingham County), Charles Goldstein was appointed as the receiver of the Company

and charged with liquidating the Company▮ The Receiver has elected to join with Curtis, Sharon, Boyd, and Peaceful Valley in pursuing their derivative claims against the Defendants. The defendants are Gene Dixon, Jr. ("Gene"), Guy Bishop Dixon ("Guy"), Erica Vail Dixon ("Vail"), Arch Huddle Dixon ("Arch"), and Barbara Dixon ("Barbara") (Gene, Guy, Vail, Arch, and Barbara will be referred to collectively as the "Dixons"). The Dixons are defendants in both their individual capacities and their capacities as officers and/or directors of one or more of the corporate plaintiffs. In addition, named as defendants in their capacities as officers and/or directors of one or more of the corporate plaintiffs are Herbert B. Jones ("Jones"), Joseph H. Jamerson, Jr. ("Jamerson"), Ron D. Hudgins ("Hudgins"), and Benjamin Gormus ("Gormus"). Finally, Gene and Guy are defendants in their capacities as trustees of various Dixon family trusts.

This suit is a derivative action. Curtis, Sharon, Boyd, and Peaceful Valley collectively own approximately 42% of the outstanding shares of Disthene. The Plaintiffs seek to have the Dixons reimburse the Company for their "self-dealing transactions, conversion, and other breaches of fiduciary duty." Amended Complaint ¶ 3. Unless otherwise indicated, all further references to paragraphs (¶) will be to the numbered paragraphs of the Amended Complaint. The Plaintiffs also seek to recover from Gene and Guy, in their capacities as trustees of various Dixon family trusts, "millions of dollars of Disthene's assets that were wrongfully transferred to the trusts through a series of conflicted and self-dealing transactions." *Id.* This suit also seeks to void transactions of the Dixons that the Plaintiffs maintain are self-dealing. Damages are sought against the individual defendants who are not members of the Dixon family for their alleged breaches of fiduciary duties to the Company.

## The Amended Complaint

The Amended Complaint asserts four causes of action.

In Count I, the Plaintiffs allege a cause of action for conversion against the Dixons. The Plaintiffs allege that the Dixons have converted Disthene's cash by paying themselves salaries, bonuses, and director's fees that are "grossly in excess of the value of the services they have rendered to the Company." ¶ 138. In addition, according to the Plaintiffs, the Dixons have converted the Company's cash by making interest-free loans to themselves and by purchasing life insurance policies for the benefit of their various family trusts. ¶¶ 139-140. Also, in Count I, the Plaintiffs allege that the Dixons have converted the Company's non-cash assets by using the Company's employees to perform personal services for them, by using Disthene's airplane for private travel, and by "commandeering" a beach house owned by the Cavalier Hotel for their personal use. ¶¶ 141-143.

In Count II, the Plaintiffs allege that the Defendants have breached their fiduciary duties to the Company. Gene and Guy are alleged to have violated their fiduciary duty to the Company by "failing to exercise business judgment at all" and their duty of loyalty by engaging in self-dealing transactions. ¶¶ 150-156 (Gene) and ¶¶ 157-162 (Guy). Vail and Arch are alleged to have breached their duties to the Company by failing to exercise any business judgment and turning a blind eye to their family's self-dealing transactions. ¶¶ 193-198 (Vail) and ¶¶ 206-211 (Arch). Barbara is alleged to have violated her duties to the Company by failing to exercise any business judgment in her capacity as a director of the Cavalier Hotel and by engaging in self-dealing transactions. ¶¶ 212-220. The non-Dixon defendants are alleged to have violated their fiduciary duties to the Company by failing to exercise any business judgment, facilitating Gene's and Guy's alleged misdeeds, and failing to take action against the Dixons for the Dixons' conversion of the Company's assets. It is alleged that each of the non-Dixon defendants' "complete abdication of his fiduciary duties is a breach of both the duty of care and the duty of loyalty and constitutes willful misconduct in the performance of his duties." According to the Plaintiffs, these defendants are not entitled to the benefit of the business judgment rule because they exercised no business judgment. See ¶¶ 169-174 (Hudgins), ¶¶ 175-180 (Jones), ¶¶ 181-186 (Jamerson), and ¶¶ 187-192 (Gormus).

In Count III, the Plaintiffs allege that the Dixons conspired with one another to injure Disthene in its reputation, trade, business, and profession in violation of Virginia Code §§ 18.2-499 and 18.2-500.

In Count IV, the Plaintiffs allege that the Dixons conspired with one another to injure Disthene through various criminal and unlawful means.

The Defendants filed a demurrer and a plea in bar to the Amended Complaint.

*Demurrer*

A. *Count I: Conversion*

The Dixons demur to Count I on the grounds that it is a thinly-disguised claim for "constructive dividends." In prior litigation between the parties, the court ruled that Virginia does not recognize a cause of action for constructive dividends. See Order dated January 4, 2011, *Colgate, et al. v. The Disthene Group, Inc., et al.*, Case No. CL10-85 (Circuit Court of Buckingham County).

Secondly, the Dixons demur to Count I on the grounds that the Company does not have paramount title or interest in some of the allegedly converted property. They argue that, once paid, the allegedly excessive salaries, bonuses, and directors' fees became vested in the Dixons. Therefore, the

Dixons "are not wrongfully exerting dominion over the property in denial of any rights of the Company because the Company no longer has rights in the property."

Further, the Dixons maintain that the allegations that they converted cash, personal services, and real estate fail as a matter of law because "a cause of action for conversion applies only to tangible personal property" or "intangible property rights [that] arise from or are merged with a document." Demurrer and Plea in Bar at ¶ 18, quoting *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305, 440 S.E.2d 902 (1994). According to the Defendants, cash cannot be converted under Virginia law unless it is "in the form of an identifiable fund, such as a bag of money or identifiable settlement proceeds." *Jones v. Bank of America Corp.*, 2010 U.S. Dist. LEXIS 142918 at *17-*18 (E.D. Va. Aug. 24, 2010).

The Plaintiffs respond that their claim in this case for conversion is distinguishable from the claim for constructive dividends that the court struck in the prior litigation. In the prior case, Curtis, Sharon, Boyd, and Peaceful Valley made a direct claim against Gene, Guy, Vail, and Arch for excessive amounts Disthene paid to them in cash. Curtis, Sharon, Boyd, and Peaceful Valley claimed that the excessive payments amounted to "constructive dividends" that should have been paid pro rata to all shareholders. In the prior litigation, the Defendants argued that the claim was not personal to the plaintiffs and that "any attempt to recover the purported constructive dividends must be brought derivatively."

The Plaintiffs dispute the Dixons' argument that the Company lost all rights in the allegedly converted property once paid to the Dixons. First, the Plaintiffs allege that the Company is entitled to immediate possession of the funds. Amended Complaint ¶¶ 136-143. Second, it is a reasonable inference from the allegations of the Amended Complaint that the excessive payments were not authorized by the Company. Self-dealing acts of conversion by a fiduciary are presumptively fraudulent and thus unauthorized. *Grubb v. Grubb*, 272 Va. 45, 53-54, 630 S.E.2d 746 (2006). According to the Plaintiffs, "[j]ust because the Dixons succeeded in stealing Disthene's assets does not mean that Disthene has no right to recover them." Plaintiffs' Supplemental Memorandum in Opposition to Defendants' Demurrer and Pleas in Bar at p. 4. See, e.g., *Pre-Fab Steel Erectors, Inc. v. Stephens*, 2009 U.S. Dist. LEXIS 26548, 2009 WL 891828, at *12 (W.D. Va. April 1, 2009) (motion to dismiss denied where defendants allegedly converted company property through unauthorized pay raises, among other things).

The Plaintiffs assert that they have properly pleaded a cause of action for conversion. The Plaintiffs rely on *Simmons v. Miller*, 261 Va. 561, 544 S.E.2d 666 (2001). In that case, the Supreme Court of Virginia found that there was ample evidence to support the jury's verdict against a corporate officer and director for conversion where the officer and director deprived the corporation of the use and value of its property including "the *lease*

*of office space*, furniture, equipment, *cash*, and customer lists." *Id.* at 582 (emphasis added). See also *Condominium Services v. First Owners' Ass'n,* 281 Va. 561, 709 S.E.2d 163 (2011) (condominium assessments converted); *PGI, Inc. v. Rathe Productions, Inc.*, 265 Va. 334, 576 S.E.2d 438 (2003) (settlement proceeds converted).

The court agrees with the Plaintiffs that the allegations of Count I are distinct from the claim for constructive dividends stricken in the prior litigation.

*Simmons v. Miller, supra,* supports the proposition that cash and real estate can be the subjects of a conversion action. Accordingly, the court finds that, to the extent that the salaries and bonuses were not properly authorized by the Company, they can be recovered in a conversion action. The court sees no difference between Miller's conversion of her company's "office lease" in *Simmons v. Miller* and the Dixons' alleged conversion of the beach house in this case. The court, however, finds no support for the Plaintiffs' position that conversion can extend to personal services.

Accordingly, the court will overrule the demurrer to Count I as it relates to the allegations that the Dixons converted the Company's cash as alleged in ¶ 138 (excessive salaries and bonuses), ¶ 139 (interest free loans), and ¶ 140 (life insurance premiums). Similarly, the court will overrule the demurrer to Count I as it relates to the allegations that the Dixons converted the Company's beach house, as alleged in ¶ 143. The court will sustain the demurrer to Count I to the extent that the Plaintiffs contend that the Dixons converted the personal services of the Company's employees.

## B. *Count II: Breach of Fiduciary Duty*

Jones, Jamerson, Hudgins, and Gormus demur to Count II on the grounds that their actions that are alleged to be a breach of fiduciary duty are protected by the business judgment rule. Va. Code § 13.1-690. (The Dixons have not demurred to Count II.) These defendants assert that the Amended Complaint fails to allege that they acted in bad faith as is required to defeat the protection of the business judgment rule.

Whether Jones, Jamerson, Hudgins, and Gormus's actions (or lack of action) are entitled to the protection of the business judgment rule is an issue of proof for trial that is not properly reached by demurrer.

The Plaintiffs assert that they have properly pleaded a claim for breach of fiduciary duty against Jones, Jamerson, Hudgins, and Gormus.

Under Rule 1:4(d) of the Rules of the Supreme Court of Virginia:

> Every pleading shall state the facts on which the party relies in numbered paragraphs and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense.

If a complaint "contains sufficient allegations of material facts to inform a defendant of the nature of and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand demurrer." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277.

The court agrees with the Plaintiffs that the allegations of Count II as they relate to Jones, Jamerson, Hudgins, and Gormus are sufficient under Rule 1:4(d) to survive demurrer. Therefore, the demurrer to Count II will be overruled.

## C. *Counts III & IV: Statutory and Common Law Conspiracy*

The Dixons demur to these counts on the grounds of the intracorporate immunity doctrine. In addition, the Dixons assert that the alleged conspiracy is not pleaded with the requisite degree of specificity.

The Plaintiffs respond that the intracorporate immunity doctrine applies when the corporation is alleged to have conspired with its employees to harm the plaintiff, not where, as in this case, the corporation is suing its employees for conspiring against the corporation. Secondly, the Plaintiffs maintain that the Dixons' self-dealing transactions were by definition outside the scope of their agency for the Company. Third, the Dixons' personal stake in the self-dealing transactions renders the intracorporate immunity doctrine inapplicable.

The "intracorporate immunity" doctrine has been aptly summarized as follows:

> Because it takes two to form a conspiracy and a corporation can act only through its agents, officers, and employees, a "conspiracy" between a corporation and agents of the corporation acting within the scope of their employment is a legal impossibility. This doctrine, known as the "intracorporate immunity" doctrine, has an exception: if an employee, officer, or agent has an "independent personal stake" in the conspiracy, a conspiracy with the corporation may be found. Moreover, where an agent of a corporation engages in activity that is not authorized by the corporation, i.e., activity beyond the scope of their employment, a conspiracy with the corporation may be found.

*Buffalo Wings Factory, Inc. v. Mohd*, 622 F. Supp. 2d 325, 335-36 (E.D. Va. 2007) (internal citations omitted). See also *Charles E. Brauer Co. v. NationsBank*, 251 Va. 28, 36, 466 S.E.2d 382 (1996).

In this case, Counts III and IV do not allege that the Dixons conspired with the Company to harm the Plaintiffs. Instead, it is alleged that the Dixons conspired with each other to harm the Plaintiffs. Of course, the Plaintiffs now include Disthene, Kyanite, the Cavalier Hotel, and Blue Rock. Nothing in the intracorporate immunity doctrine prohibits a conspiracy claim against employees, officers, or agents who combine to harm their corporation.

The court concludes that the Plaintiffs' claims under Counts III and IV are not barred by the intracorporate immunity doctrine. In addition, the court finds the allegations of the conspiracy meet the standards of Rule 1:4(d). Accordingly, the demurrer to those counts will be overruled.

## Plea in Bar

Defendants maintain that many of the Plaintiffs' claims are barred by the applicable statute of limitations. The Defendants cite several allegations of the Amended Complaint that relate to events that happened as early as 1993. The parties agree that, for the purposes of determining if any of the Plaintiffs' claims are time-barred, the applicable date is June 28, 2010, when the Plaintiffs originally brought their derivative claims against the Defendants in a prior lawsuit. See *Colgate, et al. v. The Disthene Group, Inc., et al.*, Case No CL10-85 (Circuit Court of Buckingham County). That case was filed on June 28, 2010, and nonsuited on July 18, 2011. In the meantime, this lawsuit had commenced on December 3, 2010.

### A. *Count I: Conversion*

The parties agree that a five-year statute of limitations applies to the Plaintiffs' claims of conversion.

The Dixons argue that, under Va. Code § 8.01-230, the cause of action for conversion accrued and the statute of limitations began to run on the date the injury was sustained, not when the Plaintiffs' learned of the conversion. See Defendants' Memorandum in Support of Demurrer and Plea in Bar at p. 10.

The Plaintiffs concede that acts of conversion occurring more than five years before suit was filed are time-barred. They argue, however, that, "[w]hen wrongful acts are not continuous but occur only at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action." *Hampton Roads Sanitation District v. McDonnell*, 234 Va. 235, 360 S.E.2d 841 (1987).

The Court agrees with the Plaintiffs' argument that "[e]ach separate act of conversion by the Defendants inflicted a new injury to the [C]ompany and gave rise to a new and separate cause of action." Plaintiffs' Supplemental Memorandum in Opposition to Defendants' Demurrer and Plea in Bar at p. 10. Therefore, the Defendants' Plea in Bar will be sustained as to the Plaintiffs' conversion claim for acts occurring more than five years from the

date that the Plaintiffs first brought their derivative claims and overruled as to acts occurring within the five-year limitations period.

## B. *Count II: Breach of Fiduciary Duty*

The Defendants assert that many of the Plaintiffs' claims contained in Count II, alleging a cause of action for breach of fiduciary duty, are barred by the two-year statute of limitations. Further, the Defendants assert, the "discovery rule" does not apply to a breach of fiduciary duty claim. Thus, the cause of action for a breach of fiduciary duty is barred two years after the breach, even if the Plaintiffs were unaware of the breach at that time. Demurrer and Plea in Bar at ¶ 21.

The Plaintiffs agree that a two-year statute of limitations applies to claims of breach of fiduciary duty. Nevertheless, the Plaintiffs respond that Count II is not time-barred because: (1) the statute was tolled under Va. Code § 8.01-229(D); (2) the Defendants are equitably estopped from asserting the bar of the statute of limitations; (3) under Va. Code § 8.01-249, the statute of limitations did not begin to run until the Plaintiffs discovered the Defendants' breaches; and (4) the statute of limitation has not run as long as the fiduciary relationship exists. Alternatively, the Plaintiffs argue that the statute of limitations has not run as to breaches that occurred within two years of the date that Plaintiffs first brought their derivative claims.

The court will consider each of the Plaintiffs' arguments in turn.

## 1. *Applicability of Va. Code § 8.01-229(D)*

The Plaintiffs contend that the statute of limitations was tolled on their breach of fiduciary duty claims during the time the Defendants actively concealed their wrongdoing. In support of this argument, the Plaintiffs rely on Va. Code § 8.01-229(D), which provides that:

> When the filing of an action is obstructed by a defendant's (i) filing a petition in bankruptcy or filing a petition for an extension or arrangement under the United States Bankruptcy Act or (ii) using any other direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought.

Va. Code § 8.01-229(D). To prevail on their argument, the Plaintiffs must allege that the Defendants "undertook an affirmative act designed or intended, directly or indirectly, to obstruct [the Plaintiffs'] right to file [their] action." *Newman v. Walker*, 270 Va. 291, 298, 618 S.E.2d 336 (2005). A defendant must intend to conceal the discovery of the cause of action by "trick or artifice" and must have actually concealed it from the plaintiff for the statutory tolling to apply. The Plaintiffs argue that the Amended

Complaint is "replete with allegations of fraudulent concealment" by the Defendants.

The Defendants respond that the alleged acts of concealment are the failure to provide financial records, the failure to include self-dealing transactions on the Company's financial statements, the failure to hold board meetings, the failure to provide a copy of the Company's bylaws, and the failure to disclose information about the true value of the Company. According to the Defendants, none of those failures amounts to an affirmative act of trick or artifice sufficient to trigger the tolling provision of Va. Code § 8.01-229(D). "Mere silence by the person liable is not concealment." *Newman*, 270 Va. at 298. Further, the Defendants argue, the allegations of the Amended Complaint reveal that the Plaintiffs have been aware for years of the claims that they now contend were actively concealed from them.

The court agrees with the Defendants that the allegations of the Amended Complaint are inadequate to show that the Defendants "obstructed" the Plaintiffs from filing earlier their breach of fiduciary duty claims within the meaning of Va. Code § 8.01-229(D). The acts of concealment that the Plaintiffs allege consist of only "[m]ere silence" rather than "active concealment."

Therefore, the court concludes that the statute of limitations on the Plaintiffs' claims of breach of fiduciary duty were not tolled by operation of Va. Code § 8.01-229(D).

## 2. *Equitable Estoppel*

The Plaintiffs claim that the Defendants are equitably estopped from asserting the bar of the statute of limitations to the breach of fiduciary claims. The elements of equitable estoppel are (i) a representation, (ii) reliance, (iii) change of position, and (iv) detriment. The party claiming equitable estoppel must prove each element by clear, precise, and unequivocal evidence. *Dominick v. Vassar*, 235 Va. 295, 367 S.E.2d 487 (1988). Only under "extraordinary circumstances" will the doctrine of equitable estoppel preclude the application of a statute of limitations. *Westminster Investing Corp. v. Lamps Unlimited*, 237 Va. 543, 379 S.E.2d 316 (1989).

The court agrees with the Defendants that they are not equitably estoppel from asserting the bar of the statute of limitations to the allegations of Count II. As discussed above, the Plaintiffs allege that they were misled by the Defendants to their prejudice. The Defendants' alleged misdeeds, however, amounted to passive concealment rather than active misrepresentations that induced the Plaintiffs to sit on their rights. The allegation that the Defendants promised to be forthcoming with corporate records and then abruptly reneged on that promise is not sufficient to invoke the doctrine of equitable estoppel. Indeed, the allegations of the Amended Complaint show that, at the time, the parties were discussing the possibility of a tolling

agreement. Thus, the Plaintiffs were well-aware of the issue of the statute of limitations. See ¶¶ 115, 118-120.

### 3. *Applicability of the "Discovery Rule"*

The Plaintiffs contend that the "discovery rule" contained in Va. Code § 8.01-249(1) applies to their claims of breach of fiduciary duty. That statute provides:

> The cause of action in the actions herein listed shall be deemed to accrue as follows:
>
> 1. In actions for fraud or mistake, in actions for violations of the Consumer Protection Act (§ 59.1-196 et seq.) based upon any misrepresentation, deception, or fraud, and in actions for rescission of contract for undue influence, when such fraud, mistake, misrepresentation, deception, or undue influence is discovered or by the exercise of due diligence reasonably should have been discovered. . . .

Va. Code § 8.01-249(1). In support of their argument that the discovery rule applies to a breach of fiduciary duty claim, the Plaintiffs cite cases from Virginia circuit courts and federal courts located in Virginia. The Supreme Court of Virginia has not decided the issue.

In 2012, the United States District Court for the Eastern District of Virginia opined that the discovery rule does not apply to breach of fiduciary claims:

> In 1988, the Fourth Circuit held that the statute of limitations for a breach of fiduciary duty claim begins to run when the plaintiff discovers the breach. *International Surplus Lines Ins. Co. v. Marsh & McLennan, Inc.*, 838 F.2d 124, 128 (4th Cir. 1988). In so holding, the court relied on the statutory section providing for the discovery rule in actions for fraud. *Id. However, the Virginia Code explicitly lays out the causes of action subject to the discovery rule, and breach of fiduciary duty is not an enumerated category.* Since the *International Surplus Lines* decision, Virginia courts have repudiated the discovery rule for breach of fiduciary duty claims, and the majority of the federal courts in Virginia have followed suit.

*Jones v. Shooshan*, 855 F. Supp. 2d 594, 602-03 (E.D. Va. 2012) (emphasis added, internal citations omitted). Having reviewed the applicable case law, Judge Brinkema held that the "weight of the precedent" compelled the conclusion that a cause of action for breach of fiduciary duty accrues at the

time of the breach, not at the time the plaintiff discovers the breach. *Id.* at 603.

This court agrees with the Defendants that, if presented with the question, the Supreme Court of Virginia would be unlikely to apply the discovery rule to a claim of a breach of fiduciary duty. The Supreme Court of Virginia is mindful of the separation of powers and would be loath to add a cause of action to the provisions of Va. Code § 8.01-249 where the legislature has not seen fit expressly to include that cause of action in the statute.

Therefore, the court holds that the "discovery rule" of Va. Code § 8.01-249 does not apply to Count II of the Amended Complaint.

### 4. *Applicability of the "Adverse Domination" Doctrine*

The Plaintiffs' final argument is that the statute of limitations on the breach of fiduciary duty claim does not begin to run until the fiduciary relationship ends. According to the Plaintiffs, "[a] corporate officer has the same duties of fidelity in dealing with a corporation that arise in dealings between a trustee and a beneficiary of a trust." At common law, the statute of limitations did not begin to run on a claim of a breach of fiduciary duty against a trustee until the trustee denied or repudiated the trust and the beneficiary had notice of the denial or repudiation or until the trust terminated. Plaintiffs' Supplemental Memorandum in Opposition to Defendants' Demurrer and Plea in Bar at p. 24.

The court notes that a "continuous relationship" rule has been applied in Virginia only in cases involving professional relationships. See, e.g., *Chalifoux v. Radiology Assoc. of Richmond, Inc.*, 281 Va. 690, 708 S.E.2d 834 (2011) ("continuous treatment" rule applied to extend statute of limitations in medical malpractice case); *Shipman v. Kruck*, 267 Va. 495, 593 S.E.2d 319 (2004) ("continuous representation" rule applied to extend statute of limitations in legal malpractice case).

The Plaintiffs allege that their argument on this issue is consistent with the "federal common law doctrine of adverse domination." The Plaintiffs explain that, under that doctrine, the statute of limitations is tolled on an action alleging misconduct by an officer or director for so long as a majority of the board is controlled by the alleged wrongdoers.

> Because, in most cases, defendants' control of the corporation will make it impossible for the corporate plaintiff independently to acquire the knowledge and resources necessary to bring suit, the adverse domination rule presumes that actual notice will not be available until the corporate plaintiff is no longer under the control of the erring directors.

*Wilson v. Paine*, 288 S.W.3d 284, 287-88 (Ky. 2009). The "adverse domination" doctrine is "merely a corollary of . . . [the] discovery rule, applied in the corporate context." *Id.* at 287.

The Defendants respond that "adverse domination" doctrine has never been recognized in Virginia.

The court concludes that the Supreme Court of Virginia would be unlikely to apply the adverse domination doctrine under the facts of this case.

Accordingly, the court concludes that the Plaintiffs' claims of breach of fiduciary duty are barred for alleged breaches occurring more than two years before the date the Plaintiffs originally filed their derivative action. The plea in bar will be sustained for all such claims and overruled for breaches alleged to have occurred within two years of the filing date.

## Conclusion

For the foregoing reasons, the demurrer will be sustained in part and overruled in part.

The plea in bar will be sustained in part and overruled in part.